701 P.2d 254

**FULL CIRCLE, INC.,**
**Plaintiff-Counterdefendant-Appellant-Cross Respondent,**

v.

**Pleun SCHELLING,**
**Defendant-Counterclaimant-Respondent-Cross Appellant.**

**No. 14687.**

Court of Appeals of Idaho.

May 21, 1985.

---

Paul M. Beeks, Twin Falls, for plaintiff-counterdefendant-appellant-cross respondent.

Willis B. Benjamin, Ketchum, for defendant-counterclaimant-respondent-cross appellant.

WALTERS, Chief Judge.

This action was commenced by Full Circle, Inc., a gasoline and diesel supplier, to collect for fuel delivered to Pleun Schelling, a dairy farmer. Schelling counterclaimed, alleging that he had been charged for fuel not delivered. Schelling's counterclaim sought recovery of damages on alternative theories of fraud or breach of contract. The jury found in favor of both claimants, creating offsetting awards that resulted in a net judgment for Schelling. By remittitur, the trial court further reduced the award to Schelling. Both parties appeal. On review, we conclude the trial court did not properly instruct the jury. We therefore vacate the judgment and remand this case for a new trial.

The parties raise several issues. We need address only three areas of concern. The first involves the propriety of setting aside a default judgment. The second relates to submission to the jury of the question of the timeliness of discovery of fraud and breach of contract. The third involves instructing the jury as to the statute of limitation for recovery of damages based on alleged fraud. Because we order a new trial, discussion of other issues—regarding the sufficiency of a foundation for admission of exhibits in evidence, rulings on alternative motions for new trial or judgment notwithstanding the verdict, and the remittitur order—is not necessary.

Sometime in 1972, Full Circle agreed to deliver gasoline and diesel fuel to Schelling's dairy farm on a regular schedule. For the next eight years, Full Circle filled Schelling's fuel tanks every two weeks and billed him monthly for the fuel delivered. Schelling paid the bills without questioning Full Circle's deliveries until early 1980. In late 1979, Mrs. Schelling, who paid the dairy farm bills, expected a decrease in the farm fuel consumption to correspond with the recent departure of the adult Schelling children from the household. When no decrease occurred, Mrs. Schelling brought the fuel bills to her husband's attention. For approximately thirty days in the spring of 1980, Schelling maintained a twenty-four hour surveillance of the fuel tanks to verify that no unauthorized withdrawals were being made, then confronted Full Circle. Schelling believed the farm could not possibly have used the amount of fuel Full Circle claimed to have delivered and he declined to pay the bill for the most recent deliveries. Attempts to amicably resolve the dispute failed, and Full Circle filed suit alleging indebtedness on an open account. Schelling initially failed to respond to Full Circle's complaint and a default judgment was entered against Schelling. The default judgment was set aside on Schelling's motion. Schelling thereafter answered Full Circle's complaint and counterclaimed, alleging fraud and breach of contract. After trial, a jury returned a verdict for Full Circle on its claim for payment and also returned a verdict for Schelling on his counterclaim. The offsetting awards favored Schelling and judgment was entered in his behalf.

Full Circle timely moved for entry of judgment notwithstanding the verdict or, in the alternative, for a new trial on Schelling's counterclaim. The trial judge denied Full Circle's motions, but ordered a remittitur of the award to Schelling. The court offered Schelling the opportunity to move for a new trial in lieu of accepting the reduced award. Although Schelling apparently was content with the lesser award, Full Circle was not and filed notice of appeal. Schelling then cross appealed.

I

■ We will first address the trial court's decision to set aside the default judgment entered against Schelling. After the default was taken, Schelling moved for relief from the judgment under I.R.C.P. 60(b)(1). That rule permits a trial court to

set aside a default judgment upon a showing of mistake, inadvertence, surprise or excusable neglect. Further, the defendant seeking to set aside a default judgment must show that he has a meritorious defense to the plaintiff's case. *Hearst Corp. v. Keller*, 100 Idaho 10, 592 P.2d 66 (1979). A grant of relief under Rule 60(b) is discretionary with the trial court and its decision to set aside a default judgment will not be disturbed on appeal absent an abuse of discretion. *Sherwood and Roberts, Inc. v. Riplinger*, 103 Idaho 535, 650 P.2d 677 (1982). However, where neither findings nor specific reasons are given for the court's decision to grant relief, we can form our own impressions from the record and exercise our own discretion in deciding whether the default judgment should have been set aside. *Johnson v. Pioneer Title Company of Ada County*, 104 Idaho 727, 662 P.2d 1171 (Ct.App.1983). Here, no findings or specific reasons were given by the trial court when it set aside the default judgment. The court simply ruled that Schelling's failure to respond to the complaint resulted from excusable neglect.

The record indicates that Schelling gave the summons and complaint to his wife to mail to his attorney. Mrs. Schelling placed the papers in her car, where they became either lost or forgotten. The record also indicates Schelling could have reasonably believed his attorney would receive a copy of the summons and complaint from Full Circle's attorney because both attorneys had attempted to resolve the disputes between the parties before the suit was filed and Schelling's attorney had offered to receive service of process. In fact, Full Circle's attorney declined to send the papers to Schelling's attorney, and on the twenty-first or twenty-second day following personal service on Schelling, Full Circle took a default judgment. Schelling's attorney immediately moved to set aside the judgment, under Rule 60(b)(1).

■ Whether a party's conduct constitutes "excusable neglect"—so as to allow the default to be set aside—is determined by examining what might be expected of a

reasonably prudent person under similar circumstances. *Johnson v. Pioneer Title Company of Ada County, supra.* Because judgments by default are not favored, the general rule in doubtful cases is to grant relief from the default in order to reach a judgment on the merits. *Id.* Here, the fact that Schelling could have acted more prudently does not compel a conclusion that relief pursuant to rule 60(b) should be denied. We decline to disturb the district judge's determination that Schelling's failure to respond was excusable neglect under I.R.C.P. 60(b).

Full Circle also argues that Schelling did not demonstrate a meritorious defense to Full Circle's case in his request to have the default set aside. Schelling filed an affidavit in which he stated he "discovered that Full Circle had shorted him approximately thousands of gallons of gasoline for which he had already paid." We believe this statement sufficiently raised a meritorious defense. We conclude, therefore, that the trial court properly set aside the default judgment.

## II

We turn next to the issues concerning (a) discovery of fraud and breach of contract, and (b) a requested instruction to the jury on the statute of limitation applicable to fraud actions. As noted, Schelling's counterclaim sought relief in damages under alternative theories of fraud or breach of an oral contract. Both causes of action alleged that Full Circle failed to deliver all of the fuel for which Schelling was billed and for which he had paid.

■ The statute of limitation for an action on an oral contract is four years. I.C. § 5–217. The period of limitation for an action for relief on the ground of fraud is three years. I.C. § 5–218. Although these limitations would not apply to a purely defensive counterclaim, *e.g., Kelson v. Ahlborn*, 87 Idaho 519, 393 P.2d 578 (1964), they would apply to a counterclaim insofar as it seeks a sum in excess of the amount pleaded in the complaint. In this case, by a motion in limine made during trial, Full

Circle sought a ruling from the court as to how far back, preceding the filing of his counterclaim in January 1981, Schelling would be allowed to prove he was damaged by Full Circle's alleged failure to deliver fuel. Full Circle argued that Schelling's claim, in actuality, was one for fraud; that recovery should be limited to a three-year period preceding the time when the alleged fraud should have been discovered; and that discovery of the fraud should have occurred well before the time when Schelling claimed to have discovered the fraud during the first six months of 1980.

The trial court ruled that a reasonable person would have discovered the alleged fraud at the time of each billing received by Schelling and that the three-year statute of limitation would apply to the fraud claim. However, the court also ruled that Schelling's claim was, in reality, one for breach of an oral contract to which the four-year statute of limitation was applicable. The court therefore determined that Schelling could present evidence of "any alleged under deliveries from January 11th, 1977 on, until the termination of the agreement." At the close of trial the court refused a request by Full Circle to give an instruction to the jury that would have informed the jury of the period of time within which damages may be recovered for fraud.

A

Schelling contends the trial court erred by ruling that a reasonable person would have discovered the alleged fraud at the time of the billings by Full Circle and therefore that, as far as Schelling's counterclaim was concerned, Schelling was precluded from proving and recovering overcharges, on the theory of fraud, prior to January 1978, *i.e.*, more than three years preceding the filing of Schelling's counterclaim on January 22, 1981. Schelling asserts that the question of when he reasonably should have discovered the alleged fraud should have been reserved for the jury and not decided by the court. We agree.

Although I.C. § 5–218 recites that a cause of action for fraud does not accrue until discovery of the facts constituting the alleged fraud, our Supreme Court has held that such a cause of action also accrues at the time the fraud would have been discovered in the exercise of reasonable diligence. *Gerlach v. Schultz*, 77 Idaho 507, 244 P.2d 1095 (1952); *Nancy Lee Mines, Inc. v. Harrison*, 95 Idaho 546, 511 P.2d 828 (1973). Ordinarily, what constitutes reasonable diligence to discover fraud so as to affect the time when the statute of limitations begins to run is a question of fact for the jury. *Mills v. Mills*, 147 Cal.App.2d 107, 305 P.2d 61 (1956); *Bankers Trust Co. v. International Trust Co.*, 108 Colo. 15, 113 P.2d 656 (1941); *Oak Grove Investors v. Bell & Gossett Co.*, 668 P.2d 1075 (Nev.1983); *Mathies v. Hoeck*, 284 Or. 539, 588 P.2d 1 (1978); *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738 (1943); *Sherbeck v. Estate of Lyman*, 15 Wash.App. 866, 552 P.2d 1076 (1976); 51 AM.JUR.2d, *Limitation of Actions* § 488 at 944 (1970). Of course, where only one conclusion can be reasonably drawn from the evidence, the question of the exercise of reasonable diligence to discover fraud may be decided by the court as a matter of law. *Dilley v. Farmers Insurance Group*, 250 Or. 207, 441 P.2d 594 (1968); *Mathies v. Hoeck, supra; Ruebeck v. Hunt, supra.*

We believe the evidence in this case does not lead to only one conclusion, *i.e.*, that with reasonable diligence Schelling would have discovered the alleged fraud at the time of the billings by Full Circle. On the facts of this case we believe reasonable minds could differ as to when discovery of the alleged fraud should have occurred through the exercise of reasonable diligence, and whether reasonable diligence was used by Schelling in discovering the fraud.

However, Full Circle argues that the issue of whether reasonable diligence in discovering fraud existed is always a question of law for the court, and not of fact for the jury, citing *Stout v. Cunningham*, 33 Idaho 464, 196 P. 208 (1921). In *Stout* the

complaint alleged fraud in a transaction that had occurred more than four years before the suit was filed. The trial court dismissed the complaint, holding the action was barred by the three-year statute of limitation applicable to fraud actions (now I.C. § 5–218(4)). The Idaho Supreme Court upheld the dismissal. In so doing, the Court discussed the concept that the statute of limitation governing fraud actions could be suspended where concealment of the fraud was sufficient to prevent a person exercising reasonable diligence from discovering the facts. The Court said: "What diligence was used is a question of law to be determined by the court from the complaint." 33 Idaho at 472, 196 P. at 210. The Court then observed that the complaint in question did not allege any circumstances concerning the discovery of the fraud which would suspend the running of the statute of limitation.

We believe the holding in *Stout* is inapposite to the case before us. *Stout* was decided prior to the advent of notice pleading. It simply turned on a question of the sufficiency of allegations, under the pleading rules then in existence, to show suspension of the statute of limitation. That question clearly was a matter to be determined by the court. Here the sufficiency of the pleadings is not the issue. Rather, the inquiry in this case is—once the question of reasonable diligence in discovering fraud has been properly raised and the issue joined—whether the determination of that question is one of fact or of law. We hold that, in this case, it was a question of fact for the jury.

### B

The preceding discussion concerning the factual determination of discovery of fraud brings us to another, related area of concern—the accrual of Schelling's alternative cause of action for breach of contract. I.C. § 28-2-607(3)(a) provides that when a buyer has accepted goods sold to him by a seller, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or the buyer is barred from any remedy.

If a seller delivers less than the quantity called for by the contract the goods are nonconforming and may be rejected by the buyer. R. ANDERSON, UNIFORM COMMERCIAL CODE § 2–601: 29 at 62 (1983).

The non-conforming tender is the type of default which requires the buyer to follow carefully one of the courses of action open to him by the Code. Here the seller may not know that his tender did not conform to the contract and he should be alerted to the buyer's claims. Perhaps the non-conformity can be cured or perhaps the seller may be able to take some action to minimize the damages which the buyer will suffer. In any event, the Code requires that the buyer take certain action if he intends to claim a remedy for a non-conforming tender. The action which he must take is neither burdensome nor difficult, but it does give the seller some protection in a transaction which the buyer claims has gone awry.

. . . . .

The buyer may elect to retain non-conforming goods in spite of their non-conformity or he may be required to keep them because his rejection or revocation of acceptance was ineffective. Such a buyer is required to pay for the goods at their contract rate, but may be able to deduct from the contract price the damages which he suffered. Before the buyer can deduct damages from the price or recover damages from the seller, the buyer must have given appropriate notice. [Footnotes omitted.]

R. NORDSTROM, HANDBOOK OF THE LAW OF SALES, 425–26, 434 (1970).

The requirement of notice within a reasonable time after breach of the contract should have been discovered reflects the law formerly found in the Uniform Sales Act § 49 (I.C. § 64–309, repealed by 1967 Idaho Sess.Laws chp. 161, sec. 10–102, p. 569, when the Uniform Commercial Code was enacted). As with the question of reasonable diligence in discovering fraud,

under § 49 of the Uniform Sales Act, whether a buyer gave a seller notice within a reasonable time after the buyer knew or should have known of the breach of a sale agreement was a question for the jury, where reasonable minds might draw different inferences from the probative facts. 67 AM.JUR.2d *Sales*, § 728 at 943, *citing Victorson v. Albert M. Green Hosiery Mills, Inc.*, 202 F.2d 717 (3d Cir.1953). *See also* Annots., 41 A.L.R.2d 812, 825 (1955) and 53 A.L.R.2d 270, 280 (1957); R. ANDERSON, *supra*, § 2–602:14 at 76–77. We conclude that the trial court below also should have submitted to the jury the question of Schelling's reasonableness in discovering the alleged breach of contract and of notifying Full Circle of the breach.

### C

Next, we address whether the trial court erroneously refused to give an instruction requested by Full Circle that would have informed the jury of the three-year period of time within which damages may be recovered for fraud. Again, we agree the court erred.

Schelling was allowed, at trial, to introduce evidence in support of his claim that Full Circle did not deliver all of the fuel for which Schelling was billed during the years 1977, 1978, 1979, and the first half of 1980. The jury was instructed as to the elements necessary for recovery both for breach of contract and for fraud. However, the verdict form provided to the jury did not designate the theory, as between breach of contract or fraud, upon which the jury found Schelling was entitled to relief. The verdict form simply recited:

> On the Counter-claim of Defendant Schelling against Plaintiff Full Circle, we assess Schelling's total damages at _____, which total sum represents actual damages in the amount of _____ for fuel which was billed and paid for, but not, in fact, delivered and used, together with punitive damages in the amount of _____.

In light of the evidence covering a three-and-a-half year period, the award of the

jury—if the award was for breach of an oral contract—would have been proper (assuming Schelling's action was not barred under I.C. § 28–2–607(3)(a)). But if the award was for damages based on fraud, recovery would be limited to a three-year period immediately preceding the date when Schelling discovered, or reasonably should have discovered, the alleged fraud. I.C. § 5–218; *Gerlach v. Schultz*, 72 Idaho 507, 244 P.2d 1095 (1952). We believe it was error not to advise the jury of this limitation on Schelling's recovery and not to require the jury to state the theory upon which it found Schelling was entitled to a recovery. Such instructions were necessary to assure that Schelling would not be awarded damages on a time-barred claim. Instructing the jury to distinguish between the fraud and contract theories would also protect against a forbidden possible double recovery resulting from an award on both theories. *See Moon v. Brewer*, 89 Idaho 59, 402 P.2d 973 (1965).

The judgment is vacated. Case remanded for a new trial. Costs to appellant, Full Circle. No attorney fees on appeal.

BURNETT and SWANSTROM, JJ., concur.