757 P.2d 695

Dale H. MYERS, and Ila Myers, husband and wife, and Alan D. Myers, Plaintiffs–Appellants,

v.

A.O. SMITH HARVESTORE PROD-UCTS, INC.; A.O. Smith Corporation; and Rocky Mountain Harvestore, Inc., Defendants–Respondents,

and

Agristor Credit Corporation, Defendant.

No. 16599.

Court of Appeals of Idaho.

May 31, 1988.

Petition for Review Denied Sept. 14, 1988.

Lary C. Walker, Walker & Lindquist, Weiser, for plaintiffs-appellants.

Larry C. Hunter argued, and Douglas Martin Conde, Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents A.O. Smith Harvestore Products, Inc., and A.O. Smith Corp.

Theodore V. Wood, St. Clair, Hiller, Wood & St. Clair, Idaho Falls, for defendant-respondent Rocky Mountain Harvestore, Inc.

WALTERS, Chief Judge.

Dale and Ila Myers, operators of a dairy farm near New Plymouth, Idaho, purchased a feed storage and delivery system from Rocky Mountain Harvestore Products, Inc. (hereinafter Rocky Mountain). Alan Myers, their son, also fed his separately-owned cattle out of this unit. The system was designed and manufactured by A.O. Smith Harvestore Products, Inc., and A.O. Smith Corporation (collectively hereinafter A.O. Smith). Agristor Credit Corporation financed the purchase.[1] The Myers were dissatisfied with the system and sought help from Rocky Mountain. Eventually the Myers removed the system and brought this action against Rocky Mountain and A.O. Smith. The district court granted partial summary judgment to Rocky Mountain and A.O. Smith on the Myers' claims sounding in tort. Following a trial, the jury returned a special verdict in the defendants' favor. The court denied the Myers' subsequent motion for a new trial.

The Myers contend the summary judgment was erroneous. They also challenge the court's decision to dismiss a variety of claims after presentation of the plaintiffs' case. They assert that their new trial motion should have been granted because of alleged jury misconduct. Five jurors allegedly announced an initial position at the outset of their deliberations and then refused to participate further in the deliberations. We reverse and remand as to one dismissed claim, an alleged promise by Rocky Mountain to provide expert assistance to the Myers, but affirm in all other respects.

The feed storage and delivery system consisted of a silo and a power-operated unloading unit, located in the bottom of the silo, for removal of the silo's contents. To preserve the nutritional value of the feed, the silo was designed to be oxygen-limiting. During an eighteen-month period after installation of the system, the Myers' combined dairy herd apparently suffered from decreased milk production. The Myers assert that the silo failed to function as promised, that Rocky Mountain failed to acknowledge or to successfully cure any defects, and, as a result, the Myers suffered significant losses. They theorize that the silo was unable to accomodate significant temperature fluctuations and permitted excess air exchange. Thus, the hay stored in the silo deteriorated and milk production declined. The Myers grounded their action on nine overlapping theories: (1) strict liability arising from affirmative misrepresentation; (2) common law deceit by misrepresentation; (3) common law deceit by intentional concealment of known defects; (4) breach of the written contract; (5) breach of express warranties; (6) breach of an implied warranty of merchantability; (7) breach of an implied warranty of fitness for a particular purpose; (8) strict liability arising from the sale of an unreasonably

---

1. Early in this action the plaintiffs stipulated to dismissing Agristor and, hence, Agristor is not a party to this appeal.

dangerous product; and (9) negligent design and manufacture of the product.

Prior to trial, the defendants moved for summary judgment. Concluding that only economic losses were being sought, the court dismissed the Myers' negligence and strict liability claims. After the plaintiffs' case had been presented to the jury, A.O. Smith moved to dismiss the breach of warranty claims, to dismiss all claims of Alan Myers, and to dismiss the fraud claims. Rocky Mountain requested that all claims against it be dismissed.

The court dismissed the claims which were based upon implied warranties and denied the motions with respect to express warranties. The court declined to dismiss the claim that A.O. Smith had misrepresented the oxygen-limiting nature of the system. However, concluding the evidence did not show that Rocky Mountain knowingly had made false statements, the court dismissed the fraud claim against Rocky Mountain. The other breach of contract claims were narrowed to the breach of a promise to properly install the system. The question whether Alan Myers stood in a relationship to the defendants which would permit recovery by Alan was retained for the jury. In sum, the only theories for recovery presented to the jury were those based on express warranties made by the defendants and the fraud claim against A.O. Smith. By special verdict, the jury found against the Myers on those claims.

On review, we have collated the issues raised by the Myers according to the various judicial acts challenged. We turn first to the district court's grant of partial summary judgment.

I

The Myers contend that employees of Rocky Mountain and A.O. Smith committed a variety of tortious acts including negligently advising the Myers regarding the operation of the system and the feeding of the cattle, misrepresenting the product, negligently designing and manufacturing the product, and knowingly selling an unreasonably dangerous product. The court granted summary judgment on these claims. The Myers contend that the court erred because these allegations presented questions of fact properly to be decided by a jury. For example, Dale Myers averred that employees of Rocky Mountain indicated that a dark color and strong odor were customary for feed stored in this type of silo and did not indicate reduced quality. The Myers offered evidence that these statements were erroneous.

The district judge concluded that the Myers were seeking to recover only economic losses arising from failure of the product to meet their expectation. Therefore, in the district court's opinion, the Myers could not prevail as a matter of law on their tort theories grounded in negligence and strict liability. The Myers contend that recovery in tort would be proper because the product caused property losses, namely damage to feed and to their cattle.

Summary judgment is appropriate where a party is entitled to judgment as a matter of law after all facts and favorable inferences are drawn in the favor of the opposing party. *See* I.R.C.P. 56(c). The law of negligence and strict liability imposes no liability on the manufacturer of a product for defects which cause purely economic losses. *Tusch Enterprises v. Coffin*, 113 Idaho 37, 740 P.2d 1022 (1987); *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978). Nor does it impose a liability on the seller under such circumstances. *See id. Cf.* 2 RESTATEMENT OF TORTS § 402 A (1963). Thus, resolution of this issue turns upon a characterization of the Myers' alleged loss.

On facts similar to those in the case before us, a federal district court in Minnesota concluded "as a matter of law that the alleged damage to the alfalfa feed and the Holstein cows is non-recoverable economic loss." *Agristor Leasing v. Guggisberg*, 617 F.Supp. 902, 908 (D.Minn.1985). The court reasoned that "[t]he essence of [the Guggisberg] complaint is that the Harvestore [silo] failed to perform as expected,

and they seek to recover the resulting losses to their dairy farm...." *Id.* The court was not persuaded that physical damage to stored feed and dairy cattle resulting from feed deterioration was outside the sphere of economic loss. Citing *Guggisberg,* the instant trial court viewed the alleged harm to the Myers' feed and dairy cattle as economic losses not recoverable in tort.

This conclusion is consistent with decisions reached by other courts which have considered the same question. *See, e.g., Agristor Leasing v. Spindler,* 656 F.Supp. 653 (D.S.D.1987) (spoilage of feed causing medical, reproductive and production problems with dairy cattle and lost profit not recoverable in tort); *Agristor Leasing v. Kramer,* 640 F.Supp. 187 (D.Minn.1986) (reaffirming holding of *Guggisberg* ); *Agristor Leasing v. Meuli,* 634 F.Supp. 1208 (D.Kan.1986). *But see Agristor Credit Corp. v. Schmidlin,* 601 F.Supp. 1307, 1316 (D.Or.1985) (denying summary judgment because "[w]hether a strict tort liability claim is available depends on the type of defect, not the type of injury").

Our Supreme Court has stated:

Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use.

*Salmon River Sportsman Camps, Inc. v. Cessna Aircraft Co.,* 97 Idaho 348, 351, 544 P.2d 306, 309 (1975).

The distinction [between tort and contract or warranty recovery] rests ... on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.

*Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 23, 403 P.2d 145, 151 (1965). *See generally* Note, *Economic Loss In Products Liability Jurisprudence,* 66 COLUM.L.REV. 917 (1966).

Each case must be examined on its particular facts and in light of the foundations of the rule. Here, the Myers did not plead any specific damages due to losses in feed or cattle value. The losses suffered as a result of feed deterioration and cattle illness were manifested by income changes brought on by reduced milk production.

Arguably, the Myers did allege property damage resulting from a defective product. However, these injuries did not result from a calamitous event or dangerous failure of the product. Rather, they arose from the failure of the product to match the buyers' commercial expectations. In sum, the Myers' claim is for lost profits and consequential business losses resulting from alleged failures of the silo. "When a loss results from mere product ineffectiveness, it is the law of contracts and commercial transactions, rather than strict products liability, which fixes responsibility for the loss." *Purvis v. Consolidated Energy Products Co.,* 674 F.2d 217, 223 (4th Cir. 1982). Here these economic losses were properly addressed as predicated upon the contract claims, not in tort. *Clark v. International Harvester Co., supra.* Therefore, we hold that the district judge properly dismissed the Myers' negligence and tortious strict liability claims.

## II

We turn next to the district court's decision to dismiss certain claims following presentation of the plaintiffs' evidence. Ruling from the bench, the district judge concluded that insufficient evidence had been presented for a jury to find a breach of an implied warranty and, further, that economic losses alone were not recoverable for

breach of an implied warranty.[2] In addition, the court narrowed the breach of contract claim to a variety of oral promises and Rocky Mountain's written promise to properly install the system.

### A

■ We will first examine the implied warranties. A.O. Smith and Rocky Mountain support the district court's reasoning, and also assert that as a matter of law these warranties were disclaimed. Apparently the district court rejected the latter argument because the court believed the conspicuousness of the written disclaimer presented a factual question to be decided by a jury. However, that conclusion was erroneous. "Whether a term or clause is 'conspicuous' or not [for purposes of the Uniform Commercial Code] is for decision by the court." I.C. § 28–1–201(10). As explained below, our decision rests upon the disclaimer. Therefore, we do not reach the merits of the court's alternative reasoning.

The breadth of implied warranties is governed by the Uniform Commercial Code. *See* I.C. §§ 28–2–314, –315. Ordinarily, to be effective an implied warranty disclaimer must comply with I.C. § 28–2–316(2), which provides:

> (2) Subject to subsection (3) [not applicable here], to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

"A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." I.C. § 28–1–201(10).

■ Here, the "order form" or purchase contract directed and required the buyer's signature not on the front of the form but on its reverse side. The side of the form upon which the signatures appear included the following bold heading and paragraph:

### SECOND DISCLAIMER

NO OTHER WARRANTY, EITHER EXPRESS OR IMPLIED AND INCLUDING A WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE HAS BEEN OR WILL BE MADE BY OR IN BEHALF OF THE MANUFACTURER OR THE SELLER OR BY OPERATION OF LAW WITH RESPECT TO THE EQUIPMENT AND ACCESSORIES OR THEIR INSTALLATION, USE, OPERATION, REPLACEMENT OR REPAIR. NEITHER THE MANUFACTURER NOR THE SELLER SHALL BE LIABLE BY VIRTUE OF THIS WARRANTY, OR OTHERWISE, FOR ANY SPECIAL OR CONSEQUENTIAL LOSS OR DAMAGE (INCLUDING BUT NOT LIMITED TO THOSE RESULTING FROM THE CONDITION OR QUALITY OF ANY CROP OR MATERIAL STORED IN THE STRUCTURE) RESULTING FROM THE USE OR LOSS OF THE USE OF EQUIPMENT AND ACCESSORIES. THE MANUFACTURER MAKES NO WARRANTY WITH RESPECT TO THE ERECTION OR INSTALLATION OF THE EQUIPMENT, ACCESSORIES, OR RELATED EQUIPMENT BY THE HARVESTORE DEALER, WHO IS AN INDEPENDENT CONTRACTOR, OR BY ANY OTHER INDEPENDENT CONTRACTOR. IRRESPECTIVE OF ANY STATUTE, THE BUYER RECOGNIZES THAT THE EXPRESS WARRANTY SET FORTH ABOVE, IS THE EXCLUSIVE REMEDY TO WHICH HE IS ENTITLED AND HE WAIVES ALL

---

**2.** The court's latter conclusion of law is suspect. However, because our decision rests on the disclaimer of any implied warranties, it is unnecessary for us to examine that particular ruling.

OTHER REMEDIES, STATUTORY OR OTHERWISE.[3]

Dale and Ila Myers signed this form and initialed an "ACKNOWLEDGMENT AND RELIANCE," to the effect:

I HAVE READ AND UNDERSTOOD THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER INCLUD-ING THE WARRANTIES, DISCLAIM-ERS AND TERMS AND CONDITIONS HEREIN GIVEN TO ME, EITHER BY THE MANUFACTURER OR THE SELLER. I RELY ON NO OTHER PROMISES OR CONDITIONS AND RE-GARD THAT AS REASONABLE BE-CAUSE THESE ARE FULLY ACCEPT-ABLE TO ME.

Possibly because an exclusion may extend to a third party, see I.C. § 28–2–318 comment 1, Alan Myers has not contended that this disclaimer, if effective, is inoperative against him, a non-signing third-party.

As noted above, the question whether the disclaimer statement and acknowledgement was sufficiently conspicuous to effect a waiver is a question of law for the court. I.C. § 28–1–201(10); *Glenn Dick Equipment Co. v. Galey Construction, Inc.*, 97 Idaho 216, 541 P.2d 1184 (1975). The language quoted above is *labelled* as a disclaimer in large, bold, capital letters, and also is *written* in bold, capital letters. After examining the relevant exhibits, we hold that the written disclaimer was conspicuous and that the language effectively excluded implied warranties of merchantability and fitness for a particular purpose. Our holding is in accord with the conclusions reached by other courts which have examined nearly identical documents. *E.g., Dubbe v. A.O. Smith Harvestore Products, Inc.*, 399 N.W.2d 644 (Minn.Ct.App. 1987); *Agristor Credit Corp. v. Schmidlin*, 601 F.Supp. 1307 (D.Or.1985).

█ Even if conspicuous, the Myers suggest the disclaimer clause should not be effective because a Rocky Mountain representative told Dale Myers that the side of the form containing the parties' signatures

did not relate to his purchase. However, upon examining the referenced testimony we find a slightly different account of the execution of the document. On direct examination, Dale Myers testified:

Q: [T]here was [sic] some statements made by Mr. Collette concerning the back of this contract. What were those statements?

A: To the best of my recollection, Mr. Collette said that "That part of this contract has nothing to do with the equipment you're purchasing, the price of that equipment or anything of that nature. The back of this contract is the fine print, and you can read it." He handed me a pencil.

I started to read it, and to me, it's small print, I did not read the whole thing. And he says, "When you get through, you can initial it here and sign it here."

That's what I done [sic].

█ Where only one conclusion can reasonably be drawn from the evidence, a question of fact may be decided by an appellate court. *See Full Circle, Inc. v. Schelling*, 108 Idaho 634, 701 P.2d 254 (Ct. App. 1985). Here, the disclaimer was *not* part of the small print also appearing on the signature page. We find little in this testimony to suggest that Dale Myers was directed to ignore the disclaimer. On the contrary, he apparently was allowed to read it. Finding no reason to refuse to enforce the clause, we hold that the implied warranty claims were barred by the disclaimer.

B

Next we examine the trial court's decision to further limit the claim for breach of contract. Following presentation of the plaintiffs' evidence, the court granted a motion by the defendants to limit the breach of contract issue to oral warranties and to a claim that Rocky Mountain improperly installed the silo. The court sub-

---

**3.** No issue having been raised regarding the "irrespective of any statute" clause, we intimate no view regarding its validity.

sequently rejected all jury instructions requested by the Myers describing non-warranty contractual duties and liabilities.

The Myers take issue with the court's rejection of their claim that Rocky Mountain failed to substantially perform a promise to provide expert and sound advice and assistance regarding three aspects of the operation of the silo—feed rations, time-intervals for feeding use, and the addition of nutritional supplements to the hay in the silo. The Myers submit that the jury should have been permitted to consider the alleged breach of a promise to provide advice and assistance. In response Rocky Mountain presents four arguments: (1) no allegation of a failure to provide advice was included in the pleadings; (2) the issue was not tried; (3) on appeal, the issue was raised belatedly in the Myers' reply brief; and (4) in any event, if such a promise was made, it was in fact performed. We will examine each response in turn.

█ Modern pleading as reflected by I.R.C.P. 8(a)(1) requires only a simple concise and direct statement fairly apprising the defendants of claims and grounds upon which the claims rest. *Farrell v. Brown,* 111 Idaho 1027, 729 P.2d 1090 (Ct.App. 1986). The Myers alleged that Rocky Mountain provided advice which did not cure all problems with the dairy herd, and stated a claim for breach of contract. After reviewing the Myers' complaint, we find the pleadings sufficient to raise this issue.

Nor can we say that the claim was not tried. The Myers presented testimony regarding nutrition advice provided by Rocky Mountain and expert testimony indicating the recommended rations were inappropriate.

█ Although we must admit that the substance of the Myers' argument was not presented in their opening brief, the issue of breach of contract was listed and the supporting evidence was set forth. Unfortunately, the Myers concentrated their opening argument on their tort theories of negligent assistance and misrepresentation, rather than breach of a contract duty. Thus Rocky Mountain did not have an opportunity to respond directly in their brief

to a concise argument. However, at oral argument, Rocky Mountain did address this issue and presented substantive rebuttal. Although we do not condone the Myers' delay, no prejudice is apparent and, therefore, we will examine the substantive issue.

█ On motion of the defendants, the court would not permit the jury to consider the Myers' claim for breach of the promise to provide advice. The court's ruling was in effect a dismissal of that claim. Ordinarily, a motion for dismissal in a jury trial admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn therefrom. *Curtis v. Dewey,* 93 Idaho 847, 475 P.2d 808 (1970); *see* I.R.C.P. 41(b). Because the trial judge apparently believed express warranties to be the only contractual claims supported by the evidence, the judge also rejected many instructions sought by the Myers, relating to breach of contract.

█ Our review of the record reveals that—viewing the evidence in the light most favorable to the Myers, as we must—the jury could reasonably have concluded that the alleged promise to provide advice and assistance had been made. We are unable to say that the promise was satisfactorily performed. That question of fact was substantially contested and, therefore, was properly for the jury to decide. Accordingly, we hold that the court erred by withholding this issue from the jury. We conclude that the case must be remanded for further proceedings to determine whether Rocky Mountain breached a duty to provide expert assistance to the Myers following installation of the silo and, if a breach occurred, whether compensable damages resulted.

### III

At the close of the trial, the jury returned a special verdict. The jury found that neither Rocky Mountain nor A.O. Smith had breached express warranties with respect to increased milk production, elimination of protein supplements, diminished feed storage loss, or the oxygen-limiting character of the silo. The jury also

found that A.O. Smith made no material, false representations. The jury rejected separate claims asserted by Alan Myers for recovery based upon theories of joint venture, contract, fraud and express warranty. Finally, the jury found that the Myers had sustained no direct damages in the form of decreased product value, nor any incidental or consequential damages, resulting from the equipment not being as warranted.

The Myers contend that this verdict is tainted and should have been set aside by the trial court on their motion for a new trial. They point to their counsel's affidavit recounting information indicating "several jurors" declared immediately upon entering the jury room that they had made up their minds. In their brief and at oral argument the Myers stated that this group of jurors totaled five in number. According to the affidavit, these jurors refused to participate in deliberations. Instead they allegedly played cards while the remaining jurors deliberated. Ultimately, ten of the twelve jurors concurred in the special verdict.

A.O. Smith and Rocky Mountain note that counsel's admittedly hearsay affidavit is the only evidence presented to show misconduct. *See* I.R.E. 606(b). They contend that this allegation, even if true, does not require setting aside the jury's verdict.

█ A new trial may be granted because of jury misconduct or because of irregularities in the proceedings. I.R.C.P. 59(a)(1), (2). The decision whether to grant a new trial rests in the sound discretion of the trial court. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986); *Clark v. Foster*, 87 Idaho 134, 391 P.2d 853 (1964). Idaho Rule of Evidence 606(b) provides:

Inquiry to validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything

upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror and may be questioned about or may execute an affidavit on the issue of whether or not the jury determined any issue by resort to chance.

█ No information was presented in the affidavit suggesting that extraneous prejudicial information was improperly brought to the jury's attention, that *outside* influence was improperly brought to bear on any juror, or that the jury resorted to chance. Accordingly, the evidence of a juror's statement contained in the affidavit was inadmissible. No other grounds for a new trial were presented. Therefore, the jury's verdict and the court's order denying the new trial motion are affirmed.[4]

## IV

Finally we examine the Myers' contention that the trial court erred by rejecting jury instructions derived from two statutes: the Idaho Products Liability Reform Act, I.C. §§ 6–1401, –1410, and the Idaho Consumer Protection Act, I.C. §§ 48–601, –619.

### A

█ We turn first to the Idaho Consumer Protection Act (ICPA). The court dismissed this claim on two grounds: (1) the ICPA is not applicable to commercial transactions; and (2) failure to allege a violation

---

4. Even if admissible, the information contained in the affidavit would not require a new trial. Apparently these jurors were simply quick to move to an unswerving position based on the evidence before them. The Myers have not presented us with any authority holding that the type of behavior alleged here constitutes reversible misconduct. Although we do not condone such stubbornness on behalf of jurors when fulfilling their civic duty, we cannot say that, confronted with such behavior, a denial of a new trial would be an abuse of discretion.

of the ICPA. A.O. Smith contends that we should affirm on the second ground. We choose first to dispose of the court's theory that the ICPA is not applicable to commercial transactions.

Our statute does not expressly include or exclude commercial transactions. *Compare* Okla.Stat. tit. 15, § 752(B) (1981) ("Consumer transaction" means the advertising, offering for sale, sale, or distribution of any services or any property, tangible or intangible, real, personal or mixed, or any other article, commodity, or thing of value wherever situated, for purposes that are personal, household or business oriented.). When construing the ICPA we are instructed to give "due consideration and great weight" to interpretations by the federal trade commission and the federal courts of § 5(a)(1) of the Federal Trade Commission Act. I.C. § 48–604(1). Our research has revealed no federal cases suggesting that the comparable federal act is not intended to protect the ultimate consumer of a product merely because that consumer intends to use the product in a for-profit business. After a review of the ICPA, the regulations promulgated by the attorney general pursuant to I.C. § 48–604(2), and the published decisions relating to the ICPA, we find little to support the court's conclusion. Both the statute and the regulation include the same broad, all-inclusive definition of goods as "any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, including certificates or coupons exchangeable for such goods." *See* I.C. § 48–602(6) and IDAPA 04.01.2,8. Finding no authority to the contrary, we hold that the ICPA is applicable to this type of transaction.

■ Here, although the jury was not instructed under the ICPA, it was instructed regarding the Myers' common law fraud claims against A.O. Smith. Their responses to the special verdict question included a finding that A.O. Smith did not falsely misrepresent its product to the Myers. The

Myers suggest that the knowledge that such misconduct was statutorily condemned, as well as being a common law misdeed, might have swayed the jury. We do not find this argument persuasive. Juries are presumed to render good, conscientious decisions whether the law is established by the courts or by the legislature. The Myers have presented no sound basis for a jury to reach a different result under the ICPA. We hold that the court's refusal to present a claim under ICPA to the jury, even if error, constituted harmless error.[5] *See* I.R.C.P. 61.

**B**

■ The Myers also contend the jury should have been apprised of the Idaho Product Liability Reform Act (IPLRA). The only proposed jury instruction which had particular reference to the IPLRA read:

> The Myers additionally claim that the Defendants are liable or responsible to them under Idaho's Product Liability Reform Act. That Act provides four theories or rights of recovery: strict responsibility for a product breach of express warranty or promise; breach of an implied promise of a product's merchantability; and breach of an implied promise of a product's fitness for a particular purpose. The Myers claim that the Defendants are responsible to them under each of these rights of recovery.

This instruction, which was rejected by the court, contained no recovery theory not addressed elsewhere in the Myers' pleadings. The IPLRA itself creates no new causes of action; it merely modifies and clarifies the scope of existing product liability law. I.C. § 6–1401. None of these modifications was particularly applicable to this action.

Of those theories listed in the proposed instruction, the jury was instructed with respect to express warranties. We have held that the other claims were properly dismissed or otherwise disposed of before

5. Because we deem the error in this case to be harmless, we reserve for another day the ques-

tion whether the ICPA must be specifically pled.

they reached the jury. Error in denying an instruction may be harmless if the instruction was otherwise covered or if no prejudice resulted. *See Carpenter v. Double R Cattle Co.*, 108 Idaho 602, 701 P.2d 222 (1985); *Basye v. Hayes*, 58 Idaho 569, 76 P.2d 435 (1938). It is clear that this instruction would not have aided the jury in its task. Accordingly, we hold that any error in rejecting this instruction was harmless.

## CONCLUSION

As set forth above, we hold that the district court erred by dismissing the Myers' claim that Rocky Mountain may have breached a contractual promise to provide expert advice and assistance following installation of the silo. Therefore, the case is remanded for further proceedings consistent with that holding. In all other respects, the judgment of the court and the order denying a new trial are affirmed. Costs to appellants; no fees allowed.

BURNETT and SWANSTROM, JJ., concur.