801 P.2d 565

**Ruth MARKHAM and Ruth Markham as personal representative of the Estate of Harley B. Markham, deceased, Plaintiff–Counterdefendant–Respondent,**

v.

**B.J. ANDERTON aka Bing Anderton aka Bardell Joseph Anderton, and Mae M. Anderton, husband and wife, Defendants–Counterclaimants–Appellants.**

**B.J. ANDERTON and Mae M. Anderton, husband and wife, Third–Party Plaintiffs–Appellants,**

v.

**Bruce MARKHAM, Third–Party Defendant–Respondent.**

No. 17153.

Court of Appeals of Idaho.

Feb. 26, 1990.

Rehearing Denied Nov. 21, 1990.

B.J. Anderton and Mae Anderton, Pocatello, pro se.

Green, Service, Gasser & Kerl, Pocatello, for respondents. Archie W. Service argued.

SWANSTROM, Judge.

This is an appeal from summary judgment granted in favor of Ruth Markham, individually, and as the personal representative of the estate of Harley Markham, deceased, in a deed of trust foreclosure action against B.J. and Mae Anderton. We

discuss the following issues raised by the Andertons in this appeal: (1) whether there were genuine issues of material fact precluding summary judgment; (2) whether the district court denied the Andertons due process or equal protection of the law; (3) whether the district court violated I.A.R. 13(a) by shortening the seven-day automatic stay which is afforded by the rule when an appeal is filed; (4) whether the notice requirements of I.R.C.P. 6(d) were violated; and (5) whether the district court's decree of foreclosure is void because it was issued when the automatic stay provisions of 11 U.S.C. § 362 were in effect as a result of Anderton's Chapter 11 petition in U.S. Bankruptcy Court.

On December 31, 1976, B.J. and Mae Anderton purchased six lots adjacent to their business in Pocatello, Idaho from Harley and Ruth Markham. The Andertons signed a promissory note for $44,000 and a deed of trust on the lots to secure monthly payments of the purchase price. In August of 1982, the Andertons stopped making payments on the note. This prompted the Markhams to request a trustee's sale of the property (a nonjudicial foreclosure). The foreclosure process was halted when the Andertons filed a Chapter 13 bankruptcy petition. Some three years later, the bankruptcy proceeding was dismissed. During this period of time, Harley Markham died. Ruth Markham then opted to sue for judicial foreclosure of the deed of trust as if it were a mortgage. I.C. § 45–1503. In the course of this action, Markham moved for summary judgment and moved to dismiss a counterclaim filed by the Andertons. These motions were granted by the district court. The court then entered a decree of foreclosure and order of sale. The sheriff's sale on foreclosure was set for July 31, 1987. However, the Andertons served notice that they had filed a second bankruptcy petition, this one under Chapter 11, invoking the automatic stay provisions of 11 U.S.C. § 362. Accordingly, Markham vacated the scheduled foreclosure sale. On August 28, 1987, the bankruptcy court dismissed the second bankruptcy petition as a result of motions

filed by Markham and by another of the Andertons' creditors.

The foreclosure sale was rescheduled for September 29, 1987. On the day before the sale, the Andertons filed a notice of appeal to the Supreme Court from the summary judgment and decree of foreclosure. Although the appeal was filed more than forty-two days after the judgment, it was timely because of motions the Andertons had filed which extended the time for filing the appeal under I.A.R. 14(a). This appeal gained the Andertons an automatic seven-day stay of the proceedings under I.A.R. 13(a). Immediately, Markham filed a motion to shorten the automatic stay and obtained an order from the district court for a hearing on the motion the following morning. Notice of the hearing was served on the Andertons on September 28. At the hearing on the 29th, the district court ordered the stay be lifted and the foreclosure sale proceed as scheduled.

## SUMMARY JUDGMENT

We first consider the issue of summary judgment. The rule governing summary judgment is well-known. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. This determination is to be based "on the pleadings, depositions, and admissions on file, together with the affidavits, if any...." I.R.C.P. 56(c). All disputed facts are viewed in the favor of the non-moving party. *Myers v. A.O. Smith Harvestore Prods., Inc.*, 114 Idaho 432, 757 P.2d 695 (Ct.App.1988) (review denied). Moreover, our Supreme Court has held that even though there are no disputed facts, a motion for summary judgment must be denied when the case is to be tried to a jury, if the evidence is such that conflicting inferences can be drawn therefrom and if reasonable persons might reach different conclusions. *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982). Here, the Andertons had requested a jury on their counterclaim.

The summary judgment was entered in two parts. The first judgment, dated April

28, 1987, was quite limited. Essentially, the court made findings of certain facts which the court said "appear without substantial controversy" and which were to be deemed established for purposes of the foreclosure action. Markham's second motion for summary judgment and motion to dismiss the counterclaim were heard on June 15, 1987. The order entered after this hearing incorporated the earlier order, so here we need discuss only the final summary judgment order.

The court found that the $44,000 promissory note and deed of trust given by the Andertons to the Markhams were valid in all respects; that $27,254.16 in principal was due and owing plus $9080 in interest accrued to July 1, 1986. The court also found that Andertons had defaulted on the deed of trust provisions by failing to pay the 1982 real property taxes.

When these determinations were made, the Andertons' pleadings consisted of an answer with affirmative defenses, an amended counterclaim with a demand for jury trial, and an amended third-party complaint with a demand for jury trial. B.J. Anderton had also filed two affidavits. The first was a seven-page document, dated March 20, 1987, with over fifty pages of appended material in support of Anderton's motion to dismiss Markham's complaint. This affidavit did not specifically address or refer to Markham's first motion for summary judgment but, in our view, the allegations of fact contained in this affidavit—so far as they are competent and relevant to the motion for summary judgment—must be considered in determining whether the summary judgments were properly entered. B.J. Anderton also filed an affidavit in opposition to Markham's motion to dismiss and second motion for summary judgment on June 12, 1987, three days before the hearing on the motions for summary judgments. On the other hand, affidavits by Ruth Markham, her son, and her attorney were given in support of these motions. Our review of the record has encompassed all of these documents.

■ We deem it clearly established in the record that the purchase money note and deed of trust are valid "in all respects" as held by the district court. Anderton has made only general allegations that the deed of trust is "null and void." These allegations raise no genuine issue of fact and present no valid legal issue. We need only discuss whether there is a genuine issue of fact as to the amount of principal or interest owing on the note.

The Andertons concede that the Markhams' accounting record of payments made is correct up to August 1982. This record shows that payments were chronically late. On August 23, 1982, when the last payment was made, installments were owing and unpaid for May, June, July and August. The Markhams' records show the Andertons paid a total of $1000 in August which was credited to the two delinquent $500 installments for May and June. The Andertons allege they paid Harley Markham $2000 in cash in August 1982 and received a written receipt for the payment. · However, in a deposition taken in bankruptcy proceedings in April 1986, B.J. Anderton admitted that he has never been able to find the receipt. He conceded that without it he would have to accept the Markhams' accounting. Based on the total record before us, we believe that no genuine issue exists as to the balance owing, as found by the district court.

■ The Andertons point to evidence in the record that in April 1983 they mailed a $500 payment to the Markhams which was returned by the postal service because of a lack of a forwarding address. The Andertons contend this "tender" of a payment offers a legal defense—at least in part—to the amount claimed due on the promissory note. We disagree. The record shows that sometime prior to April 1983 the Markhams moved from Arizona to California. When the Andertons' letter—with the enclosed $500 payment—was returned by the postal service, the Andertons wrote to the Markhams' Pocatello attorney asking for the Markhams' current address. The letter, which is in the record, acknowledges that the Andertons had received notice of the foreclosure proceedings started by the Markhams. The Andertons then were

**860**

aware that a single installment payment of $500 would not be sufficient to cure the defaults. A week later the Andertons filed their first bankruptcy petition without tendering any payment on the note. The Andertons do not contend that they ever tendered the full amount of the delinquent payments to the Markhams directly or to their attorney. The Andertons have failed to show that the Markhams were obligated to accept any lesser payment. Accordingly, we hold that no genuine issue of material fact is raised by the Andertons in respect to tendered payments.

The Andertons admit they did not pay the 1982 taxes, or any taxes thereafter, on the subject real property. They admit Markham was forced to pay $1175 in taxes, interest and penalty during this litigation to avoid the issuance of a tax deed by Bannock County. The record clearly establishes the Andertons were in default in payment of installments and taxes, entitling Markham to foreclose the deed of trust.

■ In nearly every pleading and affidavit the Andertons have made numerous allegations about the conduct of an attorney who represented the Markhams in the first bankruptcy proceeding, started in 1983. The Andertons allege the attorney unreasonably opposed their plans for payment of creditors. They allege the attorney misrepresented facts to the court and, as a result, convinced the court to convert the first bankruptcy from a Chapter 13 proceeding to a Chapter 7 proceeding before this bankruptcy was dismissed. The attorney was not named as a party defendant in the present action but the Andertons did name a trustee in bankruptcy as a third-party defendant. The Andertons contend the trustee allowed the attorney to mislead the bankruptcy court and to delay the proceeding so as to lose a potential sale which would have permitted Markham and

other creditors to be paid. They contend these persons committed fraud upon the bankruptcy court. They allege personal financial loss resulted. The Andertons also contend the attorney's actions are imputable to Markham. In addition they contend these actions amounted to "refusals" to accept payments on the note.

■ The record in this appeal suggests the Andertons have made many of these same allegations in at least one of the bankruptcy proceedings. The Andertons tell us that an appeal concerning these issues is now pending in the federal courts. In any event, we are satisfied the issues they raise here are collateral to the present foreclosure action. The state district court is not the proper forum to determine whether bankruptcy court orders were distorted by alleged obstruction and misrepresentation occurring in those special proceedings. We hold these allegations raise no cognizable issue of fact to be decided in the present action.[1]

We have examined the other arguments made by the Andertons concerning the propriety of the summary judgments. We find the arguments lacking in legal merit. We conclude there are no genuine issues of material fact precluding summary judgment.

### DUE PROCESS

■ We next address the issue of due process. "The right to procedural due process guaranteed under both the Idaho and United States Constitutions requires that a person involved in the judicial process be given meaningful notice and a meaningful opportunity to be heard." *Rudd v. Rudd,* 105 Idaho 112, 115, 666 P.2d 639, 642 (1983). The Andertons assert they were denied the opportunity to present their side of the story in district court, contending the district judge was biased against them.

1. We acknowledge that the district court's order dated June 25, 1987 also granted Markham's motion to dismiss the Andertons' counterclaim. However, the Andertons have presented no cogent argument to us concerning this ruling. Accordingly, we take the position that no issue has been presented in this appeal concerning dismissal of the counterclaim. We take the same position in respect to the dismissal of the Andertons' third-party complaint against the Markhams' son, Bruce Markham. That dismissal was granted on September 15, 1987, pursuant to a motion challenging the court's jurisdiction over the person of Bruce Markham.

The Andertons have quoted to us numerous statements made by the district judge during various court proceedings. Reference is also made to specific instances where the Andertons felt the district judge limited their opportunity to present their case. Specifically, they claim the district judge excessively questioned B.J. Anderton, inhibiting his ability to present issues which were relevant and essential to their defense. After a careful review of the proceedings we are not persuaded these contentions have merit.

The dialogue which the Andertons refer to does not establish the district judge was biased against the Andertons. These quotations taken out of context do not accurately reflect what happened during the court proceedings. The total record is more revealing. The edited language found in the Andertons' briefs only shows the district judge was confronted by a pro' se defendant who failed to perceive the critical issues before the court. Unfortunately, B.J. Anderton was frequently interrupted. Apparently, the unfocused approach taken by B.J. Anderton, coupled with his repeated attempts to seek reconsideration of certain points, caused some frustration to the court. B.J. Anderton obviously was frustrated as well. However, we must ultimately conclude from the whole record that it was the Andertons' failure to address the critical issues, not bias against the Andertons, which prompted the district judge to curtail the Andertons' discussion of the issues.

## EQUAL PROTECTION

■ We now turn to the issue of equal protection. Equal protection has been defined "to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in the pursuit of happiness." *State v. Hayes,* 108 Idaho 556, 560, 700 P.2d 959, 963 (Ct. App.1985) (quoting *People v. Romo,* 14 Cal.3d 189, 121 Cal.Rptr. 111, 534 P.2d 1015, 1020 (1975)). The Andertons argue that they were denied equal protection be-

cause Markham's attorney was allowed full latitude to present whatever he wished, while the Andertons were denied such rights. In addition, the Andertons state the district judge disfavored pro se litigants and was biased in favor of Markham's attorney.

■ We are not persuaded the Andertons were deliberately disadvantaged because they were litigating pro se. It would be easy for a pro se litigant who is not trained in substantive law or legal procedure to feel disadvantaged. However, a litigant appearing pro se is held to the same standards and rules as one appearing with counsel. *Schneider v. Curry,* 106 Idaho 264, 678 P.2d 56 (Ct.App.1984) (review denied). This rule is particularly applicable to the Andertons. A review of the transcripts shows the Andertons failed to appear at numerous hearings in spite of plaintiff's attempts to assure their attendance. Despite this conduct, the record shows the district judge treated the Andertons fairly. The Andertons' failure or refusal to appear certainly resulted in some lack of opportunity to present their side of the story. The claim that the district judge was biased in favor of Markham's attorney is not established by the whole record. Furthermore, we think it is apparent that this judge, when faced with perceived repetitive or irrelevant arguments from an *attorney,* would be equally and justifiably prone to interrupt.

## DENIAL OF AUTOMATIC STAY ON APPEAL

■ We next examine whether I.A.R. 13(a) was violated by the district court's order shortening the automatic stay that began when Anderton filed his notice of appeal. Rule 13(a) states:

*Unless otherwise ordered by the district court,* upon the filing of a notice of appeal or notice of cross-appeal all proceedings and execution of all judgments, orders or decrees in a civil action in the district court, shall be automatically stayed for a period of seven (7) days. [Emphasis added.]

This rule clearly indicates the seven-day automatic stay can be shortened by order of the district court, as had been done in this case. The court's action here must be examined in context of procedural events.

On the morning of September 28, 1987, the Andertons filed notice of appeal to the Idaho Supreme Court. Pursuant to the court's decree of foreclosure, a sheriff's sale was scheduled for 10:00 a.m. the following day. As earlier noted, a sale previously scheduled for July 31 was postponed when the Andertons gave notice of a second bankruptcy proceeding. Faced with another delay, Ruth Markham responded by filing a motion to shorten or eliminate the automatic stay so the sale could proceed. In an affidavit, she asserted that if the stay was not lifted the sale would have to be advertised a third time and would again be delayed for five to six weeks. She requested, ex parte, that a hearing on her motion be scheduled for the following morning. The court granted this request and ordered an expedited hearing. In the afternoon of the 28th, notice was served on the Andertons that a hearing on the motion to shorten the automatic stay would occur the following morning. Before the hearing on the 29th the Andertons filed an affidavit objecting to the hearing and opposing the motion to shorten the automatic stay. However, the Andertons chose not to appear personally at the hearing. At the hearing, the district court ordered the automatic stay be lifted. This allowed the foreclosure sale to proceed as scheduled on September 29, 1987.

The Andertons have contended that Markham would not have been prejudiced by postponement of the sale for another five to six weeks. On the other hand, the Andertons have not shown how they were disadvantaged by the refusal to delay the sale for this period of time. In short, we hold the Andertons have not shown they were prejudiced by the order lifting the seven-day automatic stay.

### NOTICE OF HEARING

The Andertons also claim that I.R.C.P. 6(d) was violated. This rule states:

> A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than five (5) days before the time specified for the hearing, *unless a different period is fixed by these rules or by order of the court.* [Emphasis added.]

The Andertons assert that this rule was violated because they received less than five days' notice of the hearing to shorten the automatic stay. However, because Rule 6(d) specifically allows the court to shorten the five-day notice requirement, the rule was not violated.

■ The question actually is whether the district court abused its discretion by refusing to postpone the hearing as the Andertons requested. The Andertons assert that because the one-day notice was so short, it unfairly prejudiced their case. The record shows the Andertons could have attended the hearing and personally presented this assertion. Instead, they chose simply to file an affidavit in opposition to the motion to shorten the automatic stay. The record shows the district judge considered the Andertons' affidavit when making his decision to lift the automatic stay. Moreover, on September 21 the Andertons had filed an affidavit in support of a motion to set aside the sheriff's sale. This affidavit set forth the Andertons' reasons for seeking a delay of the sale. The judge considered this affidavit in ruling on this motion on September 23. Consequently, we conclude the Andertons were not prejudiced by the receipt of a one-day notice. We also conclude the district court did not abuse its discretion in conducting the hearing and in lifting the automatic stay.

### EFFECT OF BANKRUPTCY STAY ON DISTRICT COURT ORDERS

■ The final issue on appeal is whether the district court's decree of foreclosure is void because it was issued when the automatic stay provisions of 11 U.S.C. § 362 were in effect as a result of the Andertons' filing a Chapter 11 petition in U.S. Bankruptcy Court. The automatic

stay was in effect from June 22, 1987, until August 28, 1987.

Before the Chapter 11 petition was filed, the district court conducted a hearing on Markham's first motion for summary judgment. The court then entered an order on April 28, 1987, holding that the note and deed of trust were "valid in all respects," that $27,254.16 was owing on the note; that $9090 interest had accrued as of July 1, 1986, and that other issues were reserved.

The district court conducted another hearing on June 15, 1987, on Markham's second motion for summary judgment. As mentioned earlier, this resulted in findings of fact, conclusions of law and a decree of foreclosure and order of sale, all dated and filed June 25. Unknown to the court, the Andertons had filed their second petition in bankruptcy court on June 22. The Andertons did not notify the Markhams or the district court until July 6 or 7 of the new bankruptcy proceeding. When notice was received, Markham caused the scheduled foreclosure sale to be vacated. Markham also filed a motion in the bankruptcy court to have the proceedings dismissed.

After a hearing, the bankruptcy court entered an order on August 28, 1987, dismissing the Andertons' Chapter 11 proceeding under 11 U.S.C. §§ 109(g) and 1112(b). With a copy of this order in hand, Markham filed a motion in the state district court to strike a certain motion and notice which the Andertons had filed to compel the district court to reconsider and vacate its decree of foreclosure in light of the bankruptcy and its attendant automatic stay provisions. We have been furnished with a copy of the hearing minutes and transcript, but not with the motion itself. The transcript shows the Andertons filed certain objections to the hearing, but these objections are not part of the appellate record.

The hearing was conducted on September 14. The Andertons were present, ap-pearing pro se. A copy of the bankruptcy court order dated August 28, 1987, dismissing the Chapter 11 proceeding was presented to the district court. Again, the record in this appeal does not contain a copy of that order. Our record does show, however, that the bankruptcy judge found the Andertons had not filed the Chapter 11 petition in good faith. In any event, based upon the contents of the bankruptcy court order, Markham asked the district judge to reaffirm the orders and decree it had entered on June 25—when the automatic stay had been in effect—so the foreclosure sale could take place.

While the district judge did not explicitly "reaffirm" its earlier orders, he did so implicitly. The judge granted Markham's motion. He struck the Andertons' defenses which were based on the Chapter 11 automatic stay. Clearly, he intended and believed the foreclosure sale would take place as a result of the previously entered orders.[2] We decline to hold—as the Andertons would have us do—that the foreclosure sale orders are void.

We are mindful that "[i]n general, action taken in violation of the stay will be void even where there was no actual notice of the existence of the stay." 2 Collier on Bankruptcy 362.03 (15th ed. 1989); *see also Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). The basis for this rule is that the bankruptcy courts are given exclusive jurisdiction over the property of the debtor seeking relief under federal bankruptcy law. *In the Matter of Patricia Lynn Ricks,* 83 I.B.C.R. 1, 26 B.R. 134 (1983). Nevertheless, there are exceptions and limitations to the rule.

In appropriate cases the bankruptcy court may annul the stay so as to validate action taken during the pendency of the stay under 11 U.S.C. § 362(d). Also, a lifting of the stay by the bankruptcy court, followed by "confirmation" of the state court judgment entered during the stay period, has been held to "reinstate" the

---

**2.** We note in the record an "Amended Decree of Foreclosure and Order of Sale Nunc Pro Tunc" dated July 23, 1987. This amended decree only modified relief which had been granted against a governmental agency named as a party defendant. This nunc pro tunc amendment plays no part in the issue before us.

judgment. *Philippe v. Anderson*, 227 N.J. Super. 251, 546 A.2d 582 (Law Div.1988). *See also In the Matter of Patricia Lynn Ricks, supra.*

In the present case, both summary judgment hearings were held before the Chapter 11 proceeding was commenced. The second summary judgment—consisting of an order, the court's findings of fact, conclusions of law and a decree of foreclosure—was entered three days after the stay commenced but before notice of the bankruptcy had been given to the district court. At that point the summary judgment was of no effect; and until the stay was lifted, no further action was taken in the district court to enforce the decree of foreclosure. Once the Chapter 11 was dismissed, as a bad faith filing, the district court was asked to confirm the foreclosure orders; this it implicitly did. The foreclosure sale was again advertised and the district court refused the Andertons' request to postpone it. We hold, following *Philippe v. Anderson, supra,* that the district court's orders of June 25, 1987, were reinstated following dismissal of the Chapter 11 proceeding.

Accordingly, we affirm the decree of foreclosure from which this appeal was taken. Markham has requested attorney fees on appeal. Based on terms in the promissory note and deed of trust, we will award reasonable attorney fees to Markham as the prevailing party in this appeal. Fees will be determined under I.A.R. 41. Costs to respondent.

BURNETT, J., and HART, J., Pro Tem., concur.