758 P.2d 710

Cherie CARMAN, Plaintiff–Appellant,

v.

John W. CARMAN and Norma Jean Carman, husband and wife; Richard Carman and Betty Carman, husband and wife; James Frank and Jane Doe Frank, husband and wife; and Kootenai County, a political subdivision of that State of Idaho, Defendants–Respondents.

No. 16610.

Court of Appeals of Idaho.

July 26, 1988.

Scott F. Maricle, Sandpoint, and Gregory S. Staeheli (argued), Spokane, Wash., for plaintiff-appellant.

Jeffrey S. Barkdull of Quane, Smith, Howard & Hull, Coeur d'Alene, for defendants-respondents, Kootenai County.

SWANSTROM, Judge.

Cherie Carman brought this tort action against her former husband, John Carman, and against other persons allegedly involved in a scheme to defraud her. The suit relates to certain events that occurred during a divorce action between John and Cherie. Cherie alleges that John had prior knowledge of a magistrate's decision on property division, and that with this knowledge he fraudulently induced her to accept a settlement less favorable than the magistrate's decision. Kootenai County was added as a defendant in the suit after Cherie learned that a deputy court clerk may have

prematurely revealed the magistrate's forthcoming decision. The district court dismissed the action against Kootenai County on a motion for partial summary judgment. Upon certification of the judgment, Cherie appealed. The main issues are whether Cherie's claim against the county is barred by a statute of limitations and whether a genuine question of material fact exists, precluding summary judgment. We vacate the summary judgment and remand for further proceedings.

We will first note our role in this controversy. Our review on appeal from summary judgment is limited to determining whether there is a genuine question as to any material fact and, if not, whether the moving party is entitled to judgment as a matter of law. *First Security Bank of Idaho v. Absco Warehouse,* 104 Idaho 853, 664 P.2d 281 (Ct.App.1983). If a jury trial has been requested, we liberally construe the facts in the record, and draw all reasonable inferences from those facts, in favor of the non-moving party. *Pullin v. Victor,* 103 Idaho 879, 655 P.2d 86 (Ct.App.1982); *Bennett v. Bliss,* 103 Idaho 358, 647 P.2d 814 (Ct.App.1982). The record we examine consists of all the motions, affidavits, depositions, pleadings and attached exhibits, viewed collectively, not individually. *Central Idaho Agency, Inc. v. Turner,* 92 Idaho 306, 442 P.2d 442 (1968). Circumstantial evidence may create a genuine issue of material fact sufficient to withstand summary judgment. *Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 452 P.2d 362 (1969). If the evidence is such that conflicting inferences can be drawn therefrom, and if reasonable minds might reach different conclusions, summary judgment is inappropriate. *Ashby v. Hubbard,* 100 Idaho 67, 593 P.2d 402 (1979).

When the record is construed most favorably to Cherie, it reveals the following facts. John and Cherie were divorced in July, 1974, but the division of the property was not then resolved. In the spring of 1977 a court hearing was held in the divorce action to determine the amount and value of the Carmans' community property prior to division. James Frank, a friend of John Carman, testified at the hearing.

Frank worked in John's well-drilling business. The deputy court clerk at the hearing, Phyllis Gray (now Phyllis Peters), was formerly a secretary to Frank.

Weeks later, on the evening of July 11 or July 12, 1977, Peters accompanied Frank to a tavern in Coeur d'Alene, Idaho. At the tavern Frank and Peters sat with two attorneys. One of the attorneys, James English, had represented John at the property hearing. The group's conversation turned to the possible outcome of the magistrate's decision on the property division. The consensus was that John would be the clear loser because of impeachment of his testimony at the hearing.

The following morning Frank reported to John the outcome of the prior evening's discussion. On the morning of July 13, John telephoned Cherie seeking a settlement. John claimed that he was pressed for time because of a "business deal" and urged Cherie to settle by 2:00 p.m. A settlement was reached prior to John's deadline. At 3:56 p.m. the magistrate's decision was filed by Deputy Court Clerk Phyllis Peters. The magistrate's decision provided substantially more benefit to Cherie than she received in the settlement.

After Cherie learned of the magistrate's decision she began to suspect John had prior knowledge, but she had no evidence to substantiate the claim. She periodically called John through 1978 and 1979. Whenever she raised her suspicions, John always denied prior knowledge. As part of the settlement agreement, John, his new wife, and his parents signed a promissory note to Cherie for $90,000. $20,000 was paid initially with the remainder to be paid in $900 monthly installments. In 1981 Cherie brought an action against John to collect on the settlement. About this time John told Cherie that he was seeking bankruptcy relief which would "wipe out" his remaining obligation on the note. Cherie again questioned John on whether he had prior knowledge of the magistrate's decision. John continued to deny any knowledge. When asked whether the "girl" at the court had told him about the decision, John denied any complicity. Cherie also ques-

tioned Frank about his prior knowledge of the decision. Frank denied that he or anyone else had prior knowledge.

In November 1983, under oath at his bankruptcy hearing, John admitted he had prior knowledge of the magistrate's decision. John testified that his knowledge came from Frank, but he said he did not know whether the "girl" at the court had told Frank. Cherie then filed this action against John, against his wife, against his parents as co-signers of the settlement agreement, and against Frank, alleging fraudulent inducement. Frank's deposition was taken in August 1984. There he revealed his acquaintance and prior association with Peters, the "girl" at the court. But Frank maintained that Peters had made no disclosure and that the only information he relayed to John was the conclusion of the group at the tavern pertaining to John's poor prospects in the property division. Following this deposition Cherie filed a mandatory notice of tort claim with Kootenai County, and on November 14, 1984, she amended her complaint to include the county as a defendant.

By affidavit, John's divorce attorney, James English, denied discussing John's position in the case with anyone. He further indicated that the magistrate's decision "surprised" him because he expected a favorable result for John. In her affidavit, Deputy Court Clerk Peters stated that she never released the contents of any unfiled decision to Frank or anyone else.

With the record in this posture, the district court granted summary judgment to the county on four separate grounds. First, no genuine question of material fact concerning prior disclosure of the decision existed and the county was entitled to summary judgment. Second, the claim against the county was barred by the notice provisions of the Idaho Tort Claims Act. Third, the claim against the county was barred by the limitation provision of I.C. § 5–224.

Fourth, assuming a breach of confidentiality by Peters, the breach was not the proximate cause of Cherie's damage.

## I

We first address the notice and the statute of limitation questions. Under former section 6–906 of the Idaho Tort Claims Act, a claim against a county must be filed with the county clerk within 120 days "from the date the claim arose or *reasonably should have been discovered, whichever is later.*"[1] (Emphasis added.) No claim or action is allowed unless timely notice has been given. I.C. § 6–908. As to the filing of a lawsuit after notice, the Tort Claims Act has a two-year limitation period in section 6–911.[2]

▮▮ A claimant "discovers" his claim against the governmental entity only when he becomes fully apprised of the injury or damage and of the governmental entity's role. *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986). The question of when the claimant reasonably should have discovered the governmental entity's role is a question of material fact which, if genuinely disputed, is inappropriate for determination on a motion for summary judgment. *Id.; Trosper v. Raymond,* 99 Idaho 54, 577 P.2d 33 (1978). *Compare Full Circle, Inc. v. Schelling,* 108 Idaho 634, 701 P.2d 254 (Ct.App.1985) (question of reasonable diligence to discover fraud under applicable statute of limitation is a question of fact for the jury).

▮▮ Here, a question of material fact exists concerning whether Cherie reasonably should have discovered her claim against the county prior to 1984. Consequently, the limitation period should not yet be applied. This issue should be determined by the jury.

The district court expressed uncertainty as to which statute of limitation applied in this case. The court applied the most lib-

---

**1.** Amended in 1985, I.C. § 6–906 now provides 180 days in which to file a claim.

**2.** Former I.C. § 6–911, applicable here, provides a two-year period of limitation running from the date the notice of claim is filed. This statute

was amended in 1985 to provide a two-year limitation period commencing on the date the claim arose or reasonably should have been discovered, whichever is later.

**554**

eral period, four years under I.C. § 5–224, and nevertheless determined that Cherie's claim was barred. This was incorrect. As mentioned, I.C. § 6–911 is the applicable statute of limitation under the Idaho Tort Claims Act. No other statute of limitation applies. *See* I.C. § 5–201.

## II

 We now determine whether a genuine question of material fact exists regarding liability of the county. It is a familiar rule that, on summary judgment, the district court is not permitted to weigh the evidence or to resolve controverted factual issues. *American Land Title Co. v. Isaak*, 105 Idaho 600, 671 P.2d 1063 (1983). Further, if the pleadings, admissions, depositions and affidavits raise any question of credibility of witnesses or weight of the evidence, the motion for summary judgment should be denied. *Altman v. Arndt*, 109 Idaho 218, 706 P.2d 107 (Ct.App.1985).

The affidavits of Peters and English, and the deposition of Frank, flatly deny any suggestion of a prior disclosure of the magistrate's decision. However, the admission of John and the circumstantial evidence surrounding the property settlement, including reasonable inferences drawn therefrom, controvert the evidence of non-disclosure. Under these facts, a conclusion cannot be reached without weighing the opposing evidence, together with determining the credibility of the affiants and the witnesses. There appear to be genuinely disputed issues of material fact in this case. A resolution of these matters will determine the cause of action asserted by Cherie. Consequently, these issues of material fact preclude summary judgment.

## III

Finally, the district court concluded that, even assuming there was a breach of a duty by the county, the breach was not the proximate cause of Cherie's damage because the damage was "too attenuated for there to be liability as to Kootenai County." We have explained that questions of material fact exist in this case. By liberally construing the facts in the record

in Cherie's favor, we believe that reasonable minds could find the alleged premature disclosure of the magistrate's decision was a cause in fact of Cherie's alleged damages and that such damages could have been a reasonably foreseeable consequence of such disclosure. Consequently, we hold that the issue of causation remains to be determined by the trier of fact.

Accordingly, the district court's decision granting summary judgment to Kootenai County is vacated. The case is remanded for further proceedings. Costs to Cherie Carman. No attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.