820 P.2d 360

Agnes McCOY, Paul McCoy, Gregory McCoy, Justin McCoy, Abraham McCoy, Pauline Luke, Mary Louise Luke, Cecille Luke, Mary Doreen Luke White, and Rudy Luke, individuals, Plaintiffs–Appellants,

v.

James F. LYONS, an individual, and James F. Lyons of the law firm of Nixon, Nixon, Lyons and Douglas, P.C., a professional corporation in the state of Idaho, Defendant–Respondent,

and

Frank LeRoux an individual; Frank LeRoux, d/b/a Ball Creek Ranch, Defendant.

No. 18169.

Supreme Court of Idaho, Coeur d'Alene April 1991 Term.

Oct. 25, 1991.

Fred W. Gabourie, Sr., Plummer, for plaintiffs-appellants.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for defendant-respondent. Ausey H. Robnett, III argued.

BOYLE, Justice.

In this appeal from a summary judgment granted by the district court in an action alleging fraud, and other claims, we are called upon to determine whether summary judgment was properly granted. We affirm in part, reverse in part and remand for trial on the remaining issues.

## I.

According to the record,[1] the plaintiffs in this appeal, members of the Luke and McCoy families, are all members of the Kootenai Indian tribe and residents of Canada in British Columbia. They are the heirs of Joseph Chiqui, a chief of the Indian tribe who resided in the United States on a reservation near Bonners Ferry, Boundary County, Idaho.

Chiqui died of natural causes in Bonners Ferry in September, 1974. Before his death, Chiqui inherited undivided fractional interests in five parcels of land, held in trust for him by the United States, by virtue of his status as an enrolled American Indian. Chiqui died testate but his will was disapproved by the U.S. Department of the Interior due to a technical violation of the regulatory scheme applicable to American Indians.[2]

As a result, on March 24, 1976, the Office of Hearings and Appeals of the U.S. Department of the Interior conducted a hearing to determine the heirs of the decedent, Joseph Chiqui. The defendant-respondent in this appeal, attorney James F. Lyons, appeared at that hearing on behalf of three persons—David Luke, Alice Shottana, and Baptiste Cutsack—who claimed to be heirs of Chiqui. The administrative law judge determined at that hearing that these persons lacked sufficient evidence of their relationship to Chiqui and gave them 60 days to produce such evidence.

On June 24, 1976, the administrative law judge issued an order determining the heirs of the estate. This order was not based on any information produced by Lyons. The administrative order stated: "This decision, insofar as heirship interests are concerned, is based solely upon records of the Northern Idaho Indian Agency as no one appeared at the time and place set for the hearing able to provide data essential to the family history of the deceased, nor has anyone so capable been identified thereto." Of the three persons Lyons had represented at the hearing, only David Luke was ultimately determined to be an heir of Chiqui.

Because the United States has no trust obligation to Canadian Indians, the plaintiff-heir's interests in the Chiqui estate were issued as alienable patents in fee.

---

1. The record before us consists of the verified amended complaint and attached exhibits, depositions of the plaintiff-heirs and the transcripts of two hearings held before the district court. No affidavits were filed by any of the parties.

2. Chiqui had given his entire estate, which consisted of the land interests at issue in this case, to a woman whom Chiqui considered to be his "adopted mother." However, she predeceased Chiqui and no new will was made. The will was disapproved due to an anti-lapse provision in the regulatory provisions of 43 C.F.R. § 4.261 applicable to U.S. trust Indians.

With the exception of David Luke, Lyons did not represent the thirteen heirs [3] identified in the original order prior to the time it was issued. Nevertheless, on October 22, 1976, David Luke signed a fee agreement which provided that Lyons represented all of the heirs and that each of the heirs owed Lyons a fee. By April 30, 1977, the plaintiff-heirs signed documents at Lyons' office which indicated that they "would have received no interest in said estate or been declared an heir but for the efforts of [Lyon's law firm] under the employment agreement with David Luke."

The record raises questions of fact and contains seven allegations that Lyons arranged the sale of the Chiqui estate to Frank LeRoux doing business as Ball Creek Ranch while also representing the heirs in the sale. The amended verified complaint filed by the plaintiff-heirs alleges that Lyons had represented LeRoux in land transactions and other business matters prior to this sale. The record established, for purposes of summary judgment, that Lyons never informed the heirs that he represented LeRoux and there is nothing in the record before us indicating consent was obtained from the heirs allowing Lyons to represent both parties in the land sale transaction.

According to the heirs' depositions, Lyons notified them that they could obtain cash proceeds from a transaction on the Chiqui property by traveling to Bonners Ferry to sign the necessary paperwork. The heirs signed the deeds related to their land interests, but to varying degrees the depositions indicate several of the heirs did not fully understand what they were signing. According to the depositions, some thought the transaction was a sale and another thought it was a lease. All testified Lyons was not present to answer the heirs' questions before they signed the deeds, and when construed in a light most favorable to appellants, Lyons never explained to the plaintiff-heirs the significance of the agreements and deeds which they signed.

In addition, the record supports appellants' position that Lyons did not inform the plaintiff-heirs of an appraisal on the Chiqui property made by the United States Bureau of Indian Affairs in 1975 for the purpose of fixing probate fees or the 1976 administrative order which accepted the appraised value. Because Lyons had allegedly received the appraisal and the administrative order prior to the sale, the heirs alleged in the verified complaint that Lyons knew that the sales price arranged with LeRoux was grossly inadequate because it amounted to only a fraction of the appraised value.[4]

Christopher Luke, the chief of the Kootenai tribe and not a party to this suit, became aware of the price for which the land was sold to LeRoux in April, 1977. He contacted a barrister from Cranbrook, British Columbia, Canada, named Harvey Gansner who wrote Lyons on April 14, 1977 inquiring about the adequacy of the price and other aspects of the transaction.[5]

---

**3.** The thirteen heirs identified in the administrative law judge's original order are David Luke, Antoine Ernest, Mary Louise Luke, Cecelia (Cecille) Luke, Pauline Luke, Christopher Luke, Mary Doreen Luke, Rudy Luke, Gregory McCoy, Paul McCoy, Justine McCoy, Abraham McCoy, Agnes McCoy. All of the McCoy family members listed and all of the Luke family members listed, with the exception of David and Christopher Luke are plaintiffs in this appeal. Eventually, Mary Cecile Luke Ignatius and Amelia Luke Ignatius were also determined to be heirs of the estate but are not plaintiffs to this appeal.

**4.** In a document entitled "Inventory and Appraisement of Trust Interests—Northern Idaho Agency," attached to the verified amended complaint as Exhibit "F", the total value of the land

interests in the Chiqui estate was estimated at $33,964.33 as of the date of Chiqui's death. While remaining somewhat unclear from the record, based on the portion of the estate inherited by the plaintiffs in this case, it appears that the appraised value of the plaintiff's share was less than the full value of the Chiqui estate. Nevertheless, the sales price of the plaintiff-appellant's share was $6,180.00, only a fraction of what appears to be the plaintiff's portion of the appraised value. Lyons took $2,060 of this amount as a contingent fee leaving the heirs with only $4,120, for their land interests.

**5.** The letter from Harvey Gansner, the barrister contacted by Christopher Luke, is attached to the amended verified complaint as Exhibit "W", and specifically stated:

Lyons responded to Gansner's letter two weeks later,[6] and asserted that but for his efforts the heirs would have received nothing.

In December of 1978, Gansner arranged with Tony Shelton, an attorney in Bonners Ferry, who agreed to take over the matter for Luke. When Lyons forwarded the file material to Shelton, he also wrote a letter to Chief Christopher Luke explaining that Shelton would contact him and that "[u]ntil then there is nothing further for you to do." On April 21, 1980, sixteen months after receiving the file, Shelton forwarded the file to Idaho Legal Aid Services, Inc. On October 26, 1981, Legal Aid filed the heirs' verified amended complaint alleging causes of action based upon negligence and fraud theories.[7]

On June 26, 1987, Lyons filed a motion seeking summary judgment. On March 13, 1989, a hearing was held on the motion. After hearing oral arguments the district court advised the parties it would grant the motion for summary judgment. The subsequent written order indicated that the facts that form the basis of the complaint occurred prior to April, 1977 and that the complaint was filed "more than two years after the occurrence, act or omission of which they complain." The court also indicated that "the Plaintiffs did not submit affidavits, depositions or other evidence in opposition to the Motion for Summary Judgment which would establish an issue of fact regarding the Defendant's statute of limitations defense." As a result, the district court entered summary judgment for Lyons on the basis that the plaintiff-heirs' claims were barred by the statute of limitations. This appeal followed.

> I have been consulted by Chief Christopher Luke with respect to your handling of the above estate.
> He has raised a number of questions concerning your conduct of the case and I would appreciate an early reply concerning the following:
> 1. Mr. Luke has informed me that there is a tentative offer for the sale of the land at $150.00 per acre which, he further informs me, is grossly underestimating the estimated market value of the property.
> 2. That his uncle, David Luke, was induced to sign the agreement dated October 22nd, 1976, on the promise of advanced payments.
> 3. That it was unnecessary for your office to handle the estate as it was the Bureau of Indian Affairs duty to probate this particular estate.
> We look forward to hearing from you as soon as possible.
> Yours very truly,
> HARVEY L. GANSNER

6. In his responding letter, attached to the amended verified complaint as Exhibit "X", Lyons stated:

> I am quite surprised at Christopher Luke's attitude and I believe it is an effort to assert himself as Chief of the Kootenai Band of Indians in Canada....
> Christopher Luke is taking a rather ridiculous attitude on this matter, being one of hostility and suspicion.
> Bur (sic) for the efforts of this office he would not have anything under the will of Joseph Chiqui....
> ....

> When this matter originally came into my office the Lukes and McCoys had nothing. Now they have two-thirds of something. It was taken on a contingent fee basis as David Luke did not have the money to pay an hourly fee. If the Bureau of Indian Affairs had handled the matter entirely the Lukes and McCoys would have received absolutely nothing under the Will of Joseph Chiqui.
> ....
> *I do not know who promised Mr. David Luke advance payments, if any, but this office absolutely would not do that since it cannot be done under U.S. laws.*
> Apparently the main question is the sale price on the property.... As to valuation and amount of acreage, the figures produced are by the U.S. Bureau of Indian Affairs dating from the 1890's. These are ... original government surveys and I have been advised that part of the land has been washed down the river.

7. The plaintiff-heirs' amended verified complaint contained the following allegations relating to Lyons: fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, negligent concealment, recission for incapacity, recission for abuse of fiduciary relationship and undue influence, recission for insufficiency of consideration, rescission for fraud of purchaser, intentional malpractice, negligent malpractice, knowing concealment, and any "further claims as are warranted by the facts of this case." Shelton and LeRoux were originally named as defendants in the original proceedings, however, the action against Shelton was dismissed and no appeal taken.

## II.

A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). *Bonz v. Sudweeks*, 119 Idaho 539, 808 P.2d 876 (1991); *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851 (1991); *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 801 P.2d 37 (1990); *Olsen v. J.A. Freeman*, 117 Idaho 706, 791 P.2d 1285 (1990); *Tusch Enters. v. Coffin*, 113 Idaho 37, 740 P.2d 1022 (1987); *Rawson v. United Steelworkers of Am.*, 111 Idaho 630, 726 P.2d 742 (1986); *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986); *Bailey v. Ness*, 109 Idaho 495, 708 P.2d 900 (1985); *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982); *Kline v. Clinton*, 103 Idaho 116, 645 P.2d 350 (1982); *Ashby v. Hubbard*, 100 Idaho 67, 593 P.2d 402 (1979); *Farmers Ins. Co. v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976); *Ed Sparks & Sons v. Joe Campbell Constr. Co.*, 96 Idaho 454, 530 P.2d 938 (1974); *Schaefer v. Elswood Trailer Sales*, 95 Idaho 654, 516 P.2d 1168 (1973); *Stewart v. Hood Corp.*, 95 Idaho 198, 506 P.2d 95 (1973); *Central Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 442 P.2d 442 (1968); *Day v. Mortgage Ins. Corp.*, 91 Idaho 605, 428 P.2d 524 (1967); *Otts v. Brough*, 90 Idaho 124, 409 P.2d 95 (1965); *Steele v. Nagel*, 89 Idaho 522, 406 P.2d 805 (1965); *Jack v. Fillmore*, 85 Idaho 36, 375 P.2d 321 (1962); *Merrill v. Duffy Reed Constr. Co.*, 82 Idaho 410, 353 P.2d 657 (1960). As we have reiterated in our recent cases, upon a motion for summary judgment, all disputed facts are liberally construed in favor of the non-moving party. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851 (1991); *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 801 P.2d 37 (1990); *Tusch Enters. v. Coffin*, 113 Idaho 37, 740 P.2d 1022 (1987); *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986); *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982); *Kline v. Clinton*, 103 Idaho 116, 645 P.2d 350 (1982). The burden of prov-

ing the absence of a material fact rests at all times upon the moving party. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851 (1991); *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 868–69, 452 P.2d 362, 365–66 (1969); *Christiansen v. Rumsey*, 91 Idaho 684, 429 P.2d 416 (1967). This burden is onerous because even "[c]ircumstantial evidence can create a genuine issue of material fact." *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986); *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 868–69, 452 P.2d 362, 365–66 (1969).

Moreover, all reasonable inferences which can be made from the record shall be made in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851 (1991); *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 801 P.2d 37 (1990); *Tusch Enters. v. Coffin*, 113 Idaho 37, 740 P.2d 1022 (1987); *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986); *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982); *Kline v. Clinton*, 103 Idaho 116, 645 P.2d 350 (1982). If the record contains conflicting inferences upon which reasonable minds might reach different conclusions, a summary judgment must be denied because all doubts are to be resolved against the moving party. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851 (1991); *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 801 P.2d 37 (1990); *Kline v. Clinton*, 103 Idaho 116, 645 P.2d 350 (1982); *Farmers Ins. Co. v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976); *Lundy v. Hazen*, 90 Idaho 323, 411 P.2d 768 (1966). The requirement that all reasonable inferences be construed in the light most favorable to the non-moving party is a strict one. *Clarke v. Prenger*, 114 Idaho 766, 760 P.2d 1182 (1988).

Nevertheless, when a party moves for summary judgment the opposing party's case must not rest on mere speculation because a mere scintilla of evidence is not enough to create a genuine issue of fact. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851 (1991); *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865,

452 P.2d 362 (1969). Notwithstanding the utility of a summary judgment, a motion for summary judgment should be granted with caution. *Steele v. Nagel,* 89 Idaho 522, 406 P.2d 805 (1965). It is with these well-established principles in mind that we consider this appeal.

### III.

### A.

The first issue on appeal is whether the plaintiff-heirs in this case failed to comply with the affidavit requirements of I.R.C.P. 56(e). Because the order of the trial court granting the motion for summary judgment stated that it was partially based on the failure of the plaintiff-heirs to "submit affidavits, depositions or other evidence in opposition to the Motion for Summary Judgment," it is necessary that we address this issue.

■ It is well established that a party against whom a motion for summary judgment is sought "may not merely rest on allegations contained in his pleadings, but must come forward and produce evidence by way of deposition or affidavit to contradict the assertions of the moving party and establish a genuine issue of material fact." *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 791 P.2d 1285 (1990); *Clarke v. Prenger,* 114 Idaho 766, 760 P.2d 1182 (1988); *Rawson v. United Steelworkers of Am.,* 111 Idaho 630, 726 P.2d 742 (1986); *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986). This requirement has been made a part of our Court rules. I.R.C.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

■ It is unquestioned that the heirs did not submit affidavits to oppose the motion for summary judgment. Therefore, the particular issue before us is whether the plaintiff-heirs complied with the requirements as "otherwise provided in this rule" and whether they were required to further respond to Lyons' motion. While Rule 56(e) ordinarily requires the non-moving party to submit affidavits, depositions or other statements of "personal knowledge" which would be "admissible in evidence" at trial to refute the affidavits of the moving party, I.R.C.P. 56(e); *see also Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 869, 452 P.2d 362, 366 (1969), in this case both Lyons and the heirs chose to rely on the amended verified complaint and the depositions on file. There is nothing in Rule 56(e) which precludes the plaintiff-heirs from relying on their own depositions, which were part of the record,[8] to refute the arguments of the moving party based on those same depositions. All that Rule 56(e) requires is that the non-moving party not rest solely upon the bare allegations contained in the pleadings. The non-moving party must merely introduce evidence to support that which "set[s] forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). The sworn statements contained in the amended verified complaint, the numerous exhibits attached thereto and the heirs' depositions satisfy the requirements of I.R.C.P. 56(e).

By basing the order partially on the ground that the heirs had failed to comply with Rule 56(e), the district court incorrectly held that the non-moving party was required to submit some additional evidence not already relied upon by the moving party. The requirements of Rule 56(e) are intended to provide the trial court with sworn factual statements based on personal knowledge that are intended to be put on as evidence at trial. The Idaho Court of Appeals has held that a verified complaint alone may meet the requirements of Rule 56(e). *Camp v. Jiminez,* 107 Idaho 878, 693 P.2d 1080 (Ct.App.1984). While this Court has never had the opportunity to

---

**8.** The depositions of Justin McCoy, Pauline Luke, Agnes McCoy, Abraham McCoy, Cecille Luke, Mary Louise Luke and Mary Doreen Luke White are contained in the record before us.

address whether a verified complaint alone meets the requirements of Rule 56(e), we hold that the heirs met and satisfied the requirements of the rule when they relied on their depositions, in addition to, the sworn contents of the verified amended complaint and the numerous exhibits attached thereto. As long as the non-moving party relies on statements that are based on personal knowledge and which would be admissible as evidence at trial and does more than rest on mere allegations or denials in his pleading, it will be considered sufficient to comply with Rule 56(e). *See* I.R.C.P. 56(e).

Even if the district court had been correct in concluding that Rule 56(e) required the heirs to submit affidavits or evidentiary matter other than those relied upon by the moving party, the requirements of Rule 56(e) would have been met for an even more fundamental reason. In *Central Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 442 P.2d 442 (1968), the respondent sought to uphold the trial court's order by charging that the appellant had not complied with Rule 56(e) because of failure to submit affidavits in response to the motion. In *Turner*, we approved of the Federal Advisory Committee explanation of the identical Federal rule and quoted the Committee saying: "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Central Idaho Agency*, 92 Idaho at 310, 442 P.2d at 446.

This explanation follows directly from I.R.C.P. 56(e) because even without an affidavit or other "opposing evidentiary matter" presented by the non-moving party, summary judgment will not be "appropriate," as that term should be understood in the last sentence of Rule 56(e), if the motion for summary judgment fails to eliminate all genuine issues of material fact. Thus, assuming that the original pleadings raise genuine issues of material fact, Rule 56(e) indicates that the non-moving party is only required to counter the assertions made by the movant, by tendering affidavits, depositions, or other sworn statements, if the motion puts at issue the question of whether material issues of genuine fact remain. If there are any genuine issues of material fact which remain to be determined by the trial court after receiving the motion for summary judgment then by definition summary judgment is not appropriate. I.R.C.P. 56(e).

■ Therefore, we hold that on those issues of material fact raised by the heirs which are not eliminated as a result of Lyons' supporting documents there is no affirmative requirement to respond by affidavit or otherwise under the rule, particularly in light of the verified amended complaint, the attachments thereto and depositions on file. Accordingly, we hold that plaintiffs have satisfied the requirements of I.R.C.P. 56(e).

### B.

Having held that the heirs met the requirements of Rule 56(e), the substantive question remains whether genuine issues of material fact existed on Lyons' statute of limitations defense. We note at the outset that the motion for summary judgment was based solely on a statute of limitations defense and the motion did not assert that summary judgment should be granted on the substantive issue of fraud. Therefore, the heirs were not required to present any evidence to establish that a genuine issue of material fact existed on the question of fraud.

On the issue of the statute of limitations, the district court accepted Lyons' argument that the statute of limitations had run by the time the heirs filed their complaint on October 26, 1981. The court's order stated:

> The Court heard the argument of counsel and determined, from the pleadings that the activities forming the basis of the Plaintiffs' claim took place between October, 1976 and April, 1977.... The Court further determined that the Plaintiffs did not file their action until November, 1981; *more than two years after the occurrence, act or omission of which they complain.* (Emphasis added.)

The district court further stated that the plaintiff-heirs' claims "are barred by the statute of limitations" and the plaintiffs' claims against Lyons were dismissed.

While the written order granting summary judgment does not identify the specific statute of limitations provision relied upon, it appears from the record that it was based on I.C. § 5–219(4), our statute dealing with professional malpractice. Generally, this statute of limitations begins to run two years from the date of the "ocurrence, act or omission complained of." I.C. § 5–219(4). As noted above, the district court determined that the statute of limitation began to run "two years after the occurrence, act or omission of which they complain." Based on the district court's order and the arguments of defendant before the district court, it appears that the trial court granted summary judgment based on I.C. § 5–219(4).

■ However, by calculating the statute of limitations period as commencing from the date of the "occurence, act or omission complained of," the analysis of the district court did not consider the discovery rule of I.C. § 5–219(4) when malpractice is alleged to have been fraudulently concealed. Idaho Code section 5–219(4) provides in part that

> when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the [cause of action] shall be deemed to accrue *when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of.*

I.C. § 5–219(4) (emphasis added). While prior decisions of this Court have eliminat-

ed the discovery rule for professional malpractice not involving fraudulent concealment or fraud, and have replaced it with the "some damage" rule, *Bonz v. Sudweeks,* 119 Idaho 539, 808 P.2d 876 (1991); *Griggs v. Nash,* 116 Idaho 228, 775 P.2d 120 (1989); *Treasure Valley Bank v. Killen & Pittenger, P.A.,* 112 Idaho 357, 732 P.2d 326 (1987); *Mack Fin. Corp. v. Smith,* 111 Idaho 8, 720 P.2d 191 (1986); *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985); *Blake v. Cruz,* 108 Idaho 253, 698 P.2d 315 (1985); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984), this provision makes clear that when professional malpractice involves fraudulent or intentional concealment of the wrongdoing, even when the initial wrongdoing is merely negligent, the statute of limitations contained in I.C. § 5–219(4) is tolled until the injured party "knows or in the exercise of reasonable care should have been put on inquiry regarding the ... matter complained of." After that date, the statute of limitations period is one year after which an action for professional malpractice is barred.[9]

In addition, I.C. § 5–218(4), the statute of limitations for fraud, was not applied to the separately alleged acts of fraud. Idaho Code section 5–218(4) provides:

> An action for relief on the ground of fraud or mistake. The cause of action in such case [is] not to be deemed to have accrued until the *discovery,* by the aggrieved party, *of the facts constituting the fraud* or mistake. (Emphasis added.)

■ On appeal, Lyons renews his argument made before the district court that the allegations of fraud should be incorporated in the statute of limitations for professional malpractice. However, in *Umphrey v. Sprinkel,* 106 Idaho 700, 682 P.2d 1247 (1983), we held that a cause of action sounding in fraud "does not fall within the protective embrace of the professional malpractice statute. As this Court has stated

**9.** I.C. § 5–219(4) provides in pertinent part: provided further, that an action within the foregoing foreign object or fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission com- plained of, whichever is later. The term "professional malpractice" as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho.

before, '[t]he gist of a malpractice action is negligence ...' *Trimming v. Howard,* 52 Idaho 412, 416, 16 P.2d 661, 662 (1932)." This was based on the rationale that fraud is not "part of the ordinary course of performance of professional services" and therefore "does not fall with the scope of the statute." *Umphrey,* 106 Idaho at 706, 682 P.2d at 1253. In *Umphrey,* the Court concluded, "We hold, therefore, that an action for fraud or deceit is covered by the statue of limitations for fraud, I.C. § 5–218(4), rather than the statute of limitations for professional malpractice, I.C. § 5–219(4)." *Id.* In the instant action we hold that the plaintiff-heirs' allegations based on fraud are not covered by the professional malpractice statute, but rather by the fraud statute of limitations contained in I.C. § 5–218(4). *Umphrey v. Sprinkel,* 106 Idaho 700, 682 P.2d 1247 (1983).

■ The discovery rule applicable to fraud requires more than an awareness that something may be wrong but requires knowledge of the facts constituting fraud. In *Nancy Lee Mines, Inc. v. Harrison,* 95 Idaho 546, 511 P.2d 828 (1973), we held that "the statute [of limitations] does not begin to run in fraud cases 'until the discovery' of the fraud." *Id.* at 547, 511 P.2d at 829. While we also recognized in *Nancy Lee Mines* that "actual knowledge of the fraud" can be inferred if the aggrieved party could have discovered the fraud by reasonable diligence, we have since noted in our cases that the courts of this state should hesitate to infer knowledge of fraud.

In *Umphrey v. Sprinkel,* we noted that the legislature's policy on the discovery of fraud was inconsistent with inferring fraud too readily. We also reiterated that discovery relates to the facts constituting fraud rather than a mere recognition that something is wrong and the commencement of an investigation. A unanimous Court in *Umphrey* stated:

The legislature has made a policy decision, of which we approve, to provide for accrual of the cause of action for fraud upon discovery *of the facts constituting the fraud.* This is founded upon the

realization that fraud, an intentional and often orchestrated scheme, is ordinarily more difficult to discover than a negligent injury. Our holding today is consistent with the *legislature's clear intent to afford victims of fraud more time in which to discover the machinations which led to their exploitation.*

106 Idaho at 706–07, 682 P.2d at 1253–54 (emphasis added). Thus, it is clear that the question before us in this instant case is not whether the plaintiffs knew that something was wrong in 1977, but whether they knew or should have known "of the facts constituting fraud." I.C. § 5–218(4).

■ In the instant action, the record confirms that the district court ruled that the issue of when the cause of action accrued in a fraud action is a question of law. However, our cases have consistently held that where discovery of a cause of action commences the statute of limitations the date of discovery is a fact question for the jury unless there is no evidence creating a question of fact. In *Trosper v. Raymond,* 99 Idaho 54, 577 P.2d 33 (1978), the Court dealt with a similar discovery rule in the statute of limitations contained in the Idaho Tort Claims Act.

Determining when the county's interest in the gravel pond *reasonably should have been discovered* is a *question of material fact* which, by its very nature, *is inappropriate for determination on a motion for summary judgment.* I.R.C.P. 56(c); *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977); *Fairchild v. Olsen,* 96 Idaho 338, 528 P.2d 900 (1974); *Langroise v. Becker,* 96 Idaho 218, 526 P.2d 178 (1974). Such a question is properly one for jury determination unless jury trial has been waived, in which case it must be determined by the trial court after full factual presentation. We therefore hold that the trial court erred in granting respondent Canyon County's motion for summary judgment.

99 Idaho at 55, 577 P.2d at 34 (emphasis added and in original).

In *Reis v. Cox,* 104 Idaho 434, 660 P.2d 46 (1982), a medical malpractice action in-

volving a discovery issue, the Court elaborated on the factual nature of discovery for purposes of the statute of limitations:

> The time when a cause of action accrues may be a question of law or a question of fact, depending upon whether any disputed issues of material fact exist. *See Brown v. Babcock,* 273 Or. 351, 540 P.2d 1402 (1975). Where there is no dispute over any issue of material fact regarding when the cause of action accrues, the question is one of law for determination by the court. *See Mantz v. Follingstad,* 84 N.M. 473, 505 P.2d 68 (App.1972). *See also* 54 C.J.S. Limitation of Actions § 399(b). *On the other hand, where there is conflicting evidence as to when the cause of action accrued, the issue is one of fact for the trier of fact. The case law of other jurisdictions is replete with authority for this position. See, e.g., Enfield v. Hunt,* 154 Cal.Rptr. 146, 91 Ca.App.3d 417 (1979); *Bipso v. Burton,* 147 Cal.Rptr. 442, 82 Cal.App.3d 824 (1978); *George v. W–G Fertilizer, Inc.,* 205 Kan. 360, 469 P.2d 459 (1970); *Hill v. Squibb & Sons, E.R.,* 181 Mont. 199, 592 P.2d 1383 (1979); *Christensen v. Rees,* 20 Utah 2d 199, 436 P.2d 435 (1968); *Ruth v. Dight,* 75 Wash.2d 660, 453 P.2d 631 (1969); *Hill v. Clarke,* [161 W.Va. 258] 241 S.E.2d 572 (W.Va.1978). Thus, whether the trial court was correct in holding, as a matter of law, that plaintiff's claim was barred by the statute of limitations and in granting summary judgment depends on whether there were any disputed issues of material fact regarding when the plaintiff "[knew] or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of." I.C. § 5–219(4). (Emphasis added.)

104 Idaho at 438, 660 P.2d at 50. The Court in *Reis* went on to review the facts in the record and indicated that although the plaintiff had knowledge that something was wrong with her body after an operation, she still was not "put on inquiry regarding the condition or matter complained of" because she had been told it was an undissolved suture. In *Reis,* the Court determined that the discovery issue was one of fact and reversed the summary judgment.[10] *Id.* at 440, 660 P.2d 46.

Thus, our cases make it clear that issues regarding discovery for purposes of the statute of limitations should be regarded as fact questions for the jury when the discovery date is disputed. This principle is particularly applicable in summary judgment proceedings where all reasonable inferences are resolved in favor of the party opposing summary judgment. I.R.C.P. 56(c).

This distinction was recognized by the Court of Appeals in two cases subsequent to *Reis.* In *Full Circle, Inc. v. Schelling,* 108 Idaho 634, 701 P.2d 254 (Ct.App.1985), the court was faced with the identical legal issue that is presently before us. In *Full Circle* the Court of Appeals reversed a summary judgment for the defendants based on the statute of limitations in a case alleging fraud. The court stated that "[o]rdinarily, what constitutes reasonable diligence to discover fraud so as to affect the time when the statute of limitations begins to run is a question of fact for the jury." 108 Idaho at 638, 701 P.2d at 258.

In *Carman v. Carman,* 114 Idaho 551, 758 P.2d 710 (Ct.App.1988), the Court of Appeals reviewed a case in which the wife in a divorce action suspected that her former husband had inappropriately obtained information about the magistrate's decision dividing the marital property prior to settlement. However, in that case the wife did not have the evidence to substantiate her claim until long after she suspected wrong doing and had begun to inquire of her former husband about the suspected wrongdoing. Citing our case of *Trosper,* the Court of Appeals vacated the granting of summary judgment by stating:

> The question of when the claimant reasonably should have discovered the gov-

---

**10.** This is analogous to the plaintiffs in the instant case. Although they may have known something was wrong with the sale of their property in 1977, and the price obtained, the record does not demonstrate that they knew "the facts constituting fraud" as required in I.C. § 5–218(4).

ernmental entity's role is a question of material fact which, if genuinely disputed, is inappropriate for determination on a motion for summary judgment.... Here, a question of material fact exists concerning whether Cherie reasonably should have discovered her claim against the county prior to 1984. Consequently, the limitation period should not yet be applied. This issue should be determined by the jury. (Citations omitted)

114 Idaho at 553, 758 P.2d at 712.

In light of this Court's well-established rule that when an aggrieved party should have reasonably discovered fraud is a fact question, a review of the record reveals numerous factual questions. First, with regard to the sworn allegation contained in the verified complaint that Lyons was representing both the purchaser (LeRoux) and the heirs in the sale of the property, the depositions of the heirs are clear that at no time did any of the heirs know of this situation. According to the exhibits attached to the verified amended complaint, Lyons'. letter to Gansner mentions a "purchaser" but does not disclose it is his alleged client, LeRoux. Second, with regard to allegedly selling the property to LeRoux for less than the appraised value, the record suggests that the real estate which sold for approximately $6,100.00 was appraised in August, 1975, as having a value of $33,964.30. In addition, the June 24, 1976 administrative law order on the Chiqui estate also established the total property value at $33,964.30, based on the foregoing appraisal. Both of the exhibits establishing the appraised value of the Chiqui estate property were known prior to the sale and at no time does the record indicate that Lyons disclosed the appraised value to the heirs or that the purchaser was his client LeRoux. Rather, the April 28, 1977 letter from Lyons to Gansner, attached as an exhibit to the verified amended complaint, discusses both purchaser and value of the property in general terms without disclosing that the purchaser was one of his other clients and that the sale price obtained was substantially less than the appraised value. There is sufficient evidence in the record of Lyons' alleged fraudulent concealment of his representation of the purchaser, LeRoux, at the time of his sale of the heirs' property and of fraudulent concealment of the appraised value of the property to raise genuine issues of natural fact to foreclose granting summary judgment.

In this case it is undisputed that the acts complained of occurred in April, 1977, and that the complaint was filed in October, 1981, well beyond the usual two-year limitation period of I.C. § 5–219(4). However, the heirs' verified amended complaint alleged that Lyons "intentionally and knowingly concealed from Plaintiffs his malpractice to escape responsibility therefore." Accordingly, with respect to alleged fraudulent concealment of professional malpractice under I.C. § 5–219(4), the exception to the usual two-year statute of limitations is applicable, and the one-year additional period begins to run from the date to be determined by the trier of fact, of when plaintiffs knew or should have been put on inquiry of Lyons' alleged malpractice.

While the statute of limitations for professional malpractice extends only one year past the date of discovery of the alleged fraudulent concealment, the statute of limitations applicable to fraud is for three years after "the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." I.C. § 5–218(4). This statutory limitation period is applicable to the plaintiff-heirs' causes of action that sound in fraud, comprising a major portion of the amended complaint. While this statute of limitation was addressed at the hearing on the motion for summary judgment, the district court erred in calculating the limitation period as commencing from the date of the actions complained of rather than allowing a jury to determine when the plaintiff-heirs discovered the fraud or the facts constituting the fraud as required in I.C. § 5–218(4). Accordingly, the plaintiff-heirs' causes of action sounding in fraud are remanded to the district court for trial.

IV.

In conclusion, a review of the record indicates that genuine issues of material

fact exist in this case and we conclude that the district court erred in granting defendants' motion for summary judgment. The order of the district court is affirmed in part and reversed in part.

For those causes of action sounding in professional malpractice without allegations of fraud, concealment or misrepresentation, such as Lyons' failure to explain to the heirs the significance of the deeds they were signing, the applicable statute of limitation is two years from the act or occurrence complained of or two years from the date plaintiffs incurred some damage. A review of the record demonstrates that all plaintiffs suffered some damage when they received the allegedly inadequate sale proceeds less Lyons' one-third contingent fee. Therefore, we hold that the trial court did not err in granting summary judgment on the counts alleging "negligent malpractice" because those claims do not allege fraud, concealment or misrepresentation and clearly accrued in 1977 when the heirs suffered some damage. Accordingly, we affirm the district court's granting of summary judgment on those counts.

For those counts alleging fraudulent concealment of professional malpractice under 5–219(4), we reverse and remand for trial because the dates those actions accrued when plaintiffs knew or should have been put on inquiry of the alleged malpractice, and are factual questions to be resolved by the trier of fact.

For those counts alleging fraud, misrepresentation and concealment under I.C. § 5–218(4) not related to alleged concealment of professional malpractice, we reverse and remand for trial because those actions accrued when plaintiffs knew of the fraud or discovered facts constituting the fraud and are factual questions to be resolved by the trier of fact.

Costs to appellants. No fees on appeal.

BAKES, C.J., and JOHNSON, J., concur.
BISTLINE, J., sat but did not participate.

McDEVITT, Justice, dissenting.

The appellants appeal to this Court from the district court's order denying appellants' motion for reconsideration and motion to amend and sustaining the court's order granting respondent's motion for summary judgment. The order was entered on June 1, 1989, and stated, in relevant part, the following:

> The court determined that there were no genuine issues of material fact, that the applicable statutes of limitation had expired prior to the commencement of the action and that its previous Order Granting Defendant Lyons' Motion for Summary Judgment was correct.

The district court's order granting the respondent's motion for summary judgment, which was entered on March 23, 1990, contains the following determinations:

1. The activities forming the basis of the Plaintiffs' claim took place between October, 1976 and April, 1977;

2. The Plaintiffs contacted a Barrister from Cranbrook, B.C., Canada in April, 1977 for the purpose of investigating the Plaintiffs' potential claims against the moving Defendants;

3. The Plaintiffs did not file their action until November, 1981; more than two years after the occurrence, act or omission of which they complain;

4. The Plaintiffs did not submit affidavits, depositions or other evidence in opposition to the Motion for Summary Judgment which would establish an issue of fact regarding the Defendant's statute of limitations defense or whether any of the Plaintiffs were under any of the disabilities specified in Idaho Code § 5–230 which would toll the statute of limitations; and

5. There are no genuine issues of material fact, and the appellants' claims against the respondent's are barred by the statute of limitations.

This Court's opinion states that "[t]he first issue on appeal is whether the plaintiff-heirs in this case failed to comply with the requirements of I.R.C.P. 56(e). Because the order of the trial court granting the motion for summary judgment stated that it was partially based on the failure of the plaintiff-heirs to '*submit affidavits,*

*depositions or other evidence in opposition to the Motion for Summary Judgment,'* it is necessary that we address this issue." (Emphasis added.)

I believe the Court has misinterpreted the ruling of the district court in this regard. The district court did not rule that because appellants failed to submit affidavits or other evidence that summary judgment was proper. What the district court did rule was that "the [appellants] did not submit affidavits, depositions or other evidence in opposition to the Motion for Summary Judgment *which would establish an issue of fact.*" (Emphasis added.) The trial court held, in terms of the motion for summary judgment and in the context of I.R.C.P. 56(e), that when the motion is properly made and supported, the non-moving party then has the burden of coming forward with evidence that establishes a genuine issue of material fact for trial. The lengthy discussion of the "requirements" of I.R.C.P. 56(e) is dicta and is the result of a misinterpretation of the district court's ruling.

This Court, in its opinion, limits the scope of its analysis of whether the respondent established that there was no genuine issue of material fact for trial:

> We note at the outset that the motion did not assert that summary judgment should be granted on the substantive issue of fraud. Therefore, the plaintiff-heirs were not required to assert any evidence to prove that a genuine issue of material fact existed on the question of fraud.

The Court reverses and remands to the district court those counts alleging *fraudulent* concealment of professional malpractice under I.C. § 5–219(4) and *fraud,* misrepresentation, and concealment under I.C. § 5–218(4).

This Court has stated that "I.R.C.P. 9(b) requires that a party alleging fraud must plead the factual circumstances constituting fraud with particularity." *Galaxy Outdoor Adver. v. Idaho Transp. Dep't,* 109 Idaho 692, 696, 710 P.2d 602, 606 (1985). This rule states:

**Rule 9(b). Fraud, mistake, condition of the mind, violation of civil or constitutional rights.**—In all averments of fraud or mistake, or violation of civil or constitutional rights, the circumstances constituting fraud or mistake, or violation of civil or constitutional rights shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

To establish fraud, the following nine elements must be shown:

(1) A representation of fact;

(2) Its falsity;

(3) Its materiality;

(4) The speaker's knowledge of its falsity;

(5) The speaker's intent that the representation will be acted upon in a reasonably contemplated manner;

(6) The listener's ignorance of its falsity;

(7) The listener's reliance on the truth of the representation;

(8) The listener's right to rely on the truth of the representation; and

(9) The listener's consequent and proximate injury.

*Galaxy,* 109 Idaho at 696, 710 P.2d at 606 (citations omitted).

The party alleging fraud has the burden of showing these nine elements. *Galaxy,* 109 Idaho at 696, 710 P.2d at 606. The Court's statement that "the heirs were not required to present any evidence to establish that a genuine issue of material fact existed on the question of fraud" is contrary to this rule and removes the burden from the appellant-heirs.

The complaint of the appellant-heirs alleges the following as to fraud:

**FIRST CAUSE OF ACTION FRAUDULENT MISREPRESENTATION**

31. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 30 as if set forth verbatim herein.

32. That Defendant Lyons represented to Plaintiffs that he successfully represented them in the probate of the Es-

tate of Joseph Chiqui; that but for the efforts of him and his firm Plaintiffs would have taken nothing in the probate and distribution of said Estate.

33. That said representations by Defendant Lyons were false.

34. That said representations materially induced Plaintiffs to pay one-third of the proceeds from the sale of their respective interests in the Chiqui Estate to Defendant Lyons.

35. That Defendant Lyons knew of the falsity of his representations.

36. That Defendant Lyons intended that his representations be acted upon by Plaintiffs and in the manner reasonably contemplated; *i.e.,* that Plaintiffs would pay to Defendant Lyons one-third of the proceeds from the sale of their respective interests in the Chiqui Estate.

37. That Plaintiffs were ignorant of the falsity of Defendant Lyons' representations.

38. That Plaintiffs relied, by virtue of their confidential, fiduciary relationship with Defendant Lyons, on the veracity of his representation; and that Plaintiffs had a right to rely thereon.

39. That Plaintiffs were consequently and proximately injured as a result thereof.

## THIRD CAUSE OF ACTION FRAUDULENT CONCEALMENT

44. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 43 as ff set forth verbatim herein.

45. That Defendant Lyons was aware of and concealed from Plaintiffs the fair market value of their respective interests inherited from the Chiqui Estate, prior to and at the time of the signing by Plaintiffs of the aforementioned agreements to sell their interests and the instruments conveying same.

46. That the information concealed was material to the decision by Plaintiffs whether to sell their respective interests at the price offered by Defendant LeRoux, through Defendant Lyons.

47. That Defendant Lyons knew that the information concealed was material and that it could have reasonably influenced Plaintiffs' decision whether to sell their respective interests in the Chiqui Estate.

48. That Plaintiffs were not aware of the fair market value concealed by Defendant Lyons, either prior to or at the time of the signing by Plaintiffs of the aforementioned agreements and instruments.

49. That, by virtue of their confidential, fiduciary relationship with Defendant Lyons, Plaintiffs had a right to rely and did, in fact, rely on the counsel of Defendant Lyons regarding the fairness and reasonableness of the price offered by Defendant LeRoux.

50. That Plaintiffs were injured by their reliance on Defendant Lyons' counsel and his failure to disclose the fair market value of their interests.

This Court has previously ruled on the very issue presented by this appeal. In *Theriault v. A.H. Robins Co.,* 108 Idaho 303, 698 P.2d 365 (1985), the appellant appealed from the district court's decision to grant respondent's motion for summary judgment on the basis of I.C. § 5–219(4). The appellant argued that summary judgment was improper because a genuine issue of material fact existed as to whether the respondent was guilty of fraudulent concealment. There were no affidavits or other evidentiary materials in the record to support the appellant's generalized averments.

The *Theriault* Court began its analysis by quoting from *Johnson v. Gorton,* 94 Idaho 595, 598, 495 P.2d 1, 4 (1972):

Summary judgment is proper if the evidence before the court on the motion would warrant a directed verdict if the case were to go to trial. When the moving party presents materials which would entitle him to a directed verdict if presented at trial, the responding party may not hold back his evidence; he must present sufficient materials to establish a

triable issue. Those materials must set forth the facts with particularity; for if general averments were sufficient the summary judgment procedure would lose its utility. *The requirement of specificity is underscored in cases where the moving defendant has established, prima facie, a defense grounded on the statute of limitations.*

*Theriault*, 108 Idaho at 306, 698 P.2d at 368 (emphasis in original). The Court then went on to hold:

As we noted above, this requirement of specificity is underscored where, as here, the other party has established a prima facie defense on the statute of limitations. In addition, I.R.C.P. 9(b) requires that when a party is alleging fraud, the circumstances constituting the fraud must be stated with particularity.

Theriault has failed to produce any evidence of conduct by Robins designed to conceal facts in an effort to hinder her prosecuting her claim; ...

*Theriault*, 108 Idaho at 307, 698 P.2d at 369.

Paragraph 28 of the first amended complaint states:

28. Plaintiffs first learned of the agreement between Defendant Lyons and David Luke in April of 1977. Through a relative, Christopher Luke, they contacted a Barrister from Cranbrook, B.C., Canada, named Harvey L. Gansner. Mr. Gansner agreed to investigate the matter for the Chiqui heirs. He contacted Defendant Lyons on April 14, 1977. Defendant Lyons responded on April 28, 1977. Copies of these letters are attached hereto and incorporated herein as Exhibits "W" and "X" respectively.

Paragraph 29 of the first amended complaint states:

29. Being unfamiliar with United States law, Mr. Gansner referred the matter to Defendant Talbot Shelton, Jr. of Bonners Ferry, Idaho. Defendant Shelton agreed to pursue the matter for the Chiqui heirs. On December 13, 1978 Mr. Gansner transferred his file to Defendant Shelton. See Exhibits "Y" and "Z" attached hereto and incorporated herein by reference.

The first and third causes of action of the verified complaint, which is the only factual basis for the appellant's fraud allegations, incorporate by reference both of these paragraphs. When read in conjunction with the first and third causes of action, they trigger the key language of I.C. § 5-219(4), to wit:

[W]hen the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue *when the injured party knows or in the exercise of reasonable care should have been put on inquiry* regarding the condition of matter complained of.... .

(Emphasis added.) In other words, the Canadian barrister representing the plaintiffs was aware, or, in the exercise of reasonable care, should have been put on reasonable inquiry of the double representation by Lyons.

The foregoing knowledge by the plaintiff-appellants of Lyons' dual representation on or before the 13th day of December, 1978, as set forth in paragraph 29 of the verified complaint, established a "prima facie" defense grounded in the statute of limitations. *See Theriault*, 108 Idaho at 306, 698 P.2d at 368. The burden then shifted, as *Theriault* dictates, to the plaintiff-appellants to come forward with sufficient contravening data to create a genuine issue of fact.

Certainly, the appellant-heir's complaint would have been sufficient to withstand a 12(b)(6) motion, but based on the controlling *Theriault* opinion, I would hold that it cannot withstand the respondent's motion for summary judgment. This Court's opinion has stripped away the appellants' burden of establishing the nine elements of fraud, and in the process, the summary

judgment procedure in this case has lost its utility.

For the above reasons, I dissent.